THE ORANGE.[1]

THE MARIA HOFFMAN.

MEUS *et al. v.* THE ORANGE AND THE MARIA HOFFMAN.

(*District Court, S. D. New York.* June 2, 1891.)

1. COLLISION—FOG—FERRY-BOAT—OBSTRUCTION NEAR SLIP.
   Ferry-boats being obliged from public necessity to make trips even in dense fog, other boats that unnecessarily obstruct the usual modes of approach to their ferry-slips, under such circumstances, should be held solely in fault for collision, where the ferry-boat is managed with skill and judgment.

2. SAME—CASE STATED—IMPRUDENT NAVIGATION—DANGER SIGNALS.
   The ferry-boat O., running from Barclay street to Hoboken, in a dense fog, first made on the Jersey shore the masts of some lighters about 500 feet below her slip, and thence proceeded in the usual manner, not far from the ends of the wharves, towards her slip. The tug M. H. had started from a wharf on the Jersey shore about a mile above, with the barge C. on her starboard side, in the fog, and, after twice hauling up at intermediate wharves on account of the density of the fog, put into pier 3, about 300 feet below the ferry-slip, a few minutes before the O. came along. The M. H. might have gone inside of the slip above, but made fast at the end of pier 3, with her bow loose, and angling outward two or three points, and in that position the O. ran upon the barge, which was visible only 100 or 200 feet before she was struck. No signals were given by the M. H., except danger signals, too late after the ferry-boat was seen. *Held*, that the tug, and not the ferry-boat, was in fault for unnecessary and imprudent navigation in dense fog, for not going into the slip, for taking a dangerous position at the end of the pier, and for not giving warning signals.

In Admiralty. Damages for collision.
*Sydney Chubb*, for libelants.
*Leon Abbett*, for the Orange.
*Wilcox, Adams & Macklin*, for the Maria Hoffman.

BROWN, J. At about 10 minutes past 3 o'clock in the afternoon of January 2, 1891, as the ferry-boat Orange was making one of her usual trips from Barclay street, N. Y., to her ferry-slip at Hoboken, in a dense fog, on the ebb-tide, when about 300 feet below the ferry-slip she came in collision with the libelants' barge Clearfield, which was lying near the end of pier 3, causing damage, for which the above libel was filed. The claim-

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ants of the ferry-boat thereupon, upon petition under rule 59, brought in the tug Maria Hoffman also as defendant, charging the latter with fault in bringing the Clearfield into that position in the fog, and in failing to give proper signals of her presence. The evidence shows that the fog had been pretty dense all the afternoon; that an hour or two previous the tug had taken the Clearfield in tow on her starboard side from the Thingvalla's dock, a little distance above the ferry, bound for pier 6, down the river; that, after proceeding a short distance near the Jersey shore, the fog shut down so thick that she put in along-side the Hamburg dock, where she lay with the barge for a considerable time; that afterwards, when the fog lightened a little, she again attempted to make her way further down the Jersey shore, but almost as soon as she had got under way the fog again shut down thick, so that objects could not be seen more than a boat's length ahead; and that she thereupon made pier 3, a little below the ferry, as the first object she could reach, and that the upper end of the barge was made fast to the end of that pier, a few feet below its upper side, by a single line, while the lower end of the barge was left free, angling outward into the river from one to four points, according to the different estimates of the witnesses. About five minutes afterwards the collision happened. The port side of the ferry-boat, about 10 feet from her stem, struck the outer corner of the lower end of the barge, and forced the opposite corner against the pier by a considerable blow, sufficient to break the iron facing upon the ferry-boat, make some indentation in the pier, and cause considerable breaking and twisting of the barge. The ferry-boat was charged with fault in coming up so near to pier 3, and for excessive speed; the tug, for undertaking navigation in such a fog, for assuming a dangerous situation in the way of the ferry-boat, unnecessarily, and for the want of proper danger signals.

The evidence for the ferry-boat shows that after leaving her New York slip the first things seen by her pilot on the Jersey shore were the masts of some lighters in the canal, immediately below pier 4, and about 175 feet below the barge. The fog being lighter above than it was near the water below, no pier-heads and nothing at the wharves could be seen. The pilot thereupon ported his wheel, and proceeded very gently and slowly, either under a slow bell, or with occasional stops, until the barge was seen by the lookout stationed in the very front of the ferry-boat, from 100 to 150 feet ahead, and without any previous warning of her presence there. The lookout immediately hailed to back, which the pilot did, but collision was then unavoidable.

The pilot of the tug testifies that after he came to pier 3 it lightened up a little, and that he saw the ferry-boat when she was abreast of pier 5 or 6, and thereupon gave a danger signal; that he was also giving whistles at short intervals while he lay there. The other witnesses for the tug do not give any confirmation of these signals, except as to the danger signals, which all heard. The danger signals were heard also upon the ferry-boat, but not until after the barge had been seen, and the order to back given, and, as they say, when within 50 feet of the barge.

The witnesses for the tug also confirm the ferry-boat's witnesses as to the very short time between the danger signals and the collision. As these danger signals were undoubtedly given as soon as the pilot of the tug saw the ferry-boat, I can only conclude that he is mistaken as to the distance at which he first saw the ferry-boat, and that she was not seen, nor the danger signals given, until she was close upon him,—too close to make those signals of any use.

As between the ferry-boat and the tug, I think the whole blame of this collision must rest with the tug. The ordinary rules are not applicable in navigating a ferry-boat during fog so dense as prevailed at this time. Necessary steerage-way required a speed that could not be wholly overcome from the moment objects became visible that were not signaled. To apply that rule would require ferry-boats to suspend navigation. The public necessities do not admit such suspension, but require that ferry-boats shall make occasional trips. Rule 24 applies in such cases. The tug was under no such public obligations, and the evidence leaves no doubt that the fog was too thick for safe navigation in the vicinity of the ferry-slips, where the ferry-boats were obliged to enter and depart, and the tug was in fault for attempting it. I do not see any sufficient evidence to show that the ferry-boat was not carefully and skillfully handled. In crossing upon a trip of more than a mile, she first sighted the masts of the lighters within 500 feet of her slip. This, of itself, is evidence of skill and good judgment. From that point it was no fault that she should proceed near the shore. She could not do otherwise. Such is the ordinary and necessary way of making her slip under such circumstances. It is a matter of common knowledge and common prudence, and the public safety required, that other boats should keep out of the way, so far as practicable, within such limits. Pier 3, where the tug put in, was not a public pier, and the pilot of the ferry-boat had no reason to suppose that since his last trip other boats would be unnecessarily navigating there, and putting in at the outer end of that pier, so as to incumber the usual course to his slip in the fog. The slip above pier 3 was clear, and the tug should have gone in there out of the way. The free lower end of the barge also swung off from one to four points, the precise amount being uncertain, which made the situation still more dangerous. As the tug was outside of the barge, and was not struck, the probability is that the barge was angling off from the pier at least two or three points, which would make her outer corner some 50 feet further out than she would have been had she lain directly along the end of the wharf. This difference alone was sufficient to have avoided the collision.

I do not find satisfactory evidence of any excessive speed in the ferry-boat. It was not possible for her to navigate or to make her slip except at a certain moderate speed. The rule as to excessive speed cited from *The Nacoochee*, 137 U. S. 339, 11 Sup. Ct. Rep. 122, and *The Raleigh and The Niagara*, 44 Fed. Rep. 781, namely, "that she was proceeding at a speed under which she could not, by any degree of promptitude or skill, avoid a collision by reversing her engines within the distance at which she could discover approaching or stationary ves-

sels," is not, I think, applicable to the present case, for the reason above stated, and cannot be invoked by the tug or the barge. The ferry-boat was no doubt bound, under such circumstances, to proceed with all reasonable prudence and caution. In my judgment, she did so. If the barge and tow could be considered as having rightfully come to lie at the end of pier 3, and rightfully to have assumed the position they did assume, then, as respects the ferry-boat and her public duty, I should regard the collision as arising from unavoidable accident. In *The St. John*, 29 Fed. Rep. 221, the circumstances were different.

For the reasons above stated, I do not regard the tug and tow as rightfully there, rather than inside the slip above, nor as excusable in angling out as they did. Unnecessary navigation in such a fog was, in itself, imprudent and unjustifiable, and the peculiar position at pier 3 especially so. In such a position, fog-signals ought to have been given as a reasonable caution to the ferry-boat, which the tug knew was approaching. *The City of Alexandria*, 31 Fed. Rep. 427; *The J. Berwind*, 44 Fed. Rep. 693; *The Saratoga*, 37 Fed. Rep. 119. I am satisfied none, except the danger signals, were given.

Decree for the libelants against the tug, with costs. As respects the Orange, the libel is dismissed, with costs.