## THE ALBANY.

(District Court, E. D. New York. December 12, 1898.)

1. COLLISION—NEGLIGENT NAVIGATION—RATE OF SPEED IN FOG.
   Where a steam ferryboat was proceeding in North river within 300 feet of the New York piers, and where the river was usually occupied by vessels, in a fog such that the constant sounding of fog signals was required, full speed cannot be considered moderate speed, within the usual rules of navigation.[1]

2. SAME.
   The steam ferryboat Albany was proceeding from the New Jersey shore, across the North river, to her slip in New York, about 5 miles distant. There was a fog, which made it impossible to see objects at any considerable distance, and fog signals were continuously sounded. Her usual course was about 300 feet from the piers on the New York side, on account of vessels anchored in the center of the river, which was there about 2,800 feet wide. She proceeded at full speed, which was some 10 miles an hour, until it was discovered that she was within 150 feet of the Thirty-Fourth Street Pier, when her course was changed, and her speed reduced one-half. At Thirty-Second street she collided with and injured the Newark, a cattle boat, which had tied up to the end of the pier on account of the fog. As soon as the Newark was seen, the Albany changed her course, and attempted to avoid a collision; but, when she struck the Newark, her course was such that she would have passed within 30 or 40 feet of the end of the pier. *Held*, that the navigation of the Albany was negligent, and that she was in fault for the collision.

3. SAME—CONTRIBUTORY NEGLIGENCE OF MOORED VESSEL.
   The Newark was not in fault for the collision, in failing to give signals while moored to the pier, nor because she used no stern line, and her stern swung out somewhat from the pier, the slips adjacent not being used by ferryboats, and there being no occasion to expect vessels to enter, and it appearing, from the course of the Albany, that the collision would not have been avoided, had the Newark lain close to the end of the pier through her entire length.

This was a libel for collision by the Central Stock-Yard & Transit Company against the steam ferryboat Albany.

[1] As to speed of steam vessels in a fog, see note to The Niagara, 28 C. C. A. 532.

James J. Macklin, for libelant.
Herbert E. Kinney, for claimant.

THOMAS, District Judge. The ferryboat Albany, on the 9th day of March, 1896, at about 8 o'clock a. m., left her slip at Weehawken, N. J., on the west side of the North river, bound for Franklin street, New York, on the opposite side, distant about 5 miles from the place of starting. The river is about 2,800 feet in width between such termini. Fog had interrupted navigation for several hours, but had cleared sufficiently to justify navigation. Having attained her usual course, which was about 300 feet to the westward of the heads of the piers on the New York side, the course being laid to the eastward of the main channel, for the alleged reason of avoiding several vessels anchored near the center of the river, thereupon the Albany proceeded, with the flood tide running 4 or 5 miles per hour, under full speed, which in slack water was about 8 or 10 miles an hour, and maintained the same, after the fog had again thickened so that it was impossible to see objects upon the water for any considerable distance ahead, steering by compass, and continuously sounding fog signals, until the pilot sighted the end of the pier at West Thirty-Fourth street, New York, which was at that time about 150 feet away. Thereupon the wheel was put to port, and the boat proceeded under half speed until she was from 100 to 200 feet from the pier at the foot of West Thirty-Second street, New York, when the Newark, a cattle boat, shaped like a ferryboat, was discovered lying at the end of such pier. Thereupon the wheel of the Albany was put hard a-port, the engine was stopped and reversed at once, notwithstanding which the Albany, still forging ahead, struck the Newark's stern on the port side, parting her line, and causing the injury which is the subject of the libel.

The Newark, which was about 260 feet in length and about 63 feet in width, had left her dock at the foot of Sixth street, Hoboken, N. J., bound up the river, for the Sixtieth Street docks, New York. On account of the thickening fog, rendering dangerous her continuance on her course, the Newark was turned up to the end of the Thirty-Second Street pier, with her bow pointing down the river, making a flood-tide landing, and was made fast to such pier by a single line, running from a spile at the southwest corner of the pier to a point about 40 feet abaft the stem, which held her forward part close to the end of the pier, while her stern swung outward, the extreme end thereof lying above the upper side of the pier, and some 30 or 35 feet out from the end thereof.

The landing made was proper at the existing state of the tide, and it is claimed by those in charge of her that no stern line was used (1) because her stern projected so far above the pier on account of the length of the vessel, and so far outward from the pier on account of the rounding shape of her sides, that the use of a stern line was impracticable; (2) because the flood tide, sweeping against the starboard quarter, kept the stern as near to the pier as the shape of the boat would permit. This arrangement is criticised by the claimant upon the ground that, as claimed, the flood tide would not tend to set and

to hold the stern of the Newark against the pier, but created an eddy along the piers, which would tend to carry her stern outward.

The Albany continued to sound fog signals until a minute or so before the collision, but such signals do not seem to have been heard or located by those on the Newark. The Newark gave no signals, even after her captain discovered the proximity of the Albany, from 100 to 150 feet away, and probably at that time there was an insufficient opportunity to give signals before the collision occurred; but, as both boats were in sight of each other at that time, such signals would have been useless. It is urged on the part of the Newark that signals from her, while moored, would have confused those navigating the river, and that, in any case, they were not required. It appears that there was not sufficient room within the slips, on account of the presence of other boats therein, to permit the Newark to pass and make fast with safety.

Was the Albany negligent? The Albany, on a river about 2,800 feet in width, bound on a flood tide for a point some 5 miles away, took a course, which accorded with her usual course, about 300 feet from the ends of the piers on the New York side, and proceeded, constantly sounding fog signals, under full speed, in a fog that shut out the land, and became too dense to permit objects to be seen far ahead, until opposite about 150 feet from the Thirty-Fourth Street pier, when such pier was discovered. Her course was at that time such that, if she had pursued it, she would have collided with some pier near Thirty-Second street. Thereupon she slackened her speed to half speed, and ported, and later, while going 6 or 7 miles per hour, discovering the Newark, whose stern was somewhat below the Thirty-Third Street pier, the wheel of the Albany was put hard a-port, at a point between Thirty-Third and Thirty-Fourth streets, and she struck head on, as her captain states, the Newark, just forward of her stern, on the port side, which was some 30 or 40 feet away from the pier lines. Hence, the port bow of the Albany was considerably within 40 feet of the Thirty-Second Street pier at the time of the collision, and her stern must have been in close proximity to the Thirty-Third Street pier.

It seems impossible to escape the conclusion that this navigation on the part of the Albany was negligent. If the assumption of an unusual course, 300 feet to the westward of the pier lines on the New York side, be regarded as prudent navigation on a river which was some 2,800 feet in width, yet the fact that those in charge of her did, in a dense fog, knowing that boats were anchored near the center of the river, deliberately select a course so near to the New York piers, and proceed thereon under full headway, clearly shows negligent navigation, and her inability to extricate herself before coming within 40 feet of the Thirty-Second Street pier justifies such conclusion. It seems to the court that, where the fog is such that the constant sounding of fog signals is demanded, and the vessel is beset on each side by known obstacles to navigation, and where she is proceeding on a river usually occupied with vessels, full speed cannot be regarded as moderate speed, within the usual rules of navigation.

In The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, it is said:

"The general consensus of opinion in this country is that, in a fog, a steamer is bound to use only such precautions as will enable her to stop in time to avoid a collision, after the approaching vessel comes in sight, provided such approaching vessel is herself going at a moderate speed required by law."

This was said with reference to a collision which took place off the coast of Long Island, about 11 miles from the entrance to New York Harbor, and 6 miles south of Rockaway Beach.

In The Martello, 153 U. S. 64, 70, 14 Sup. Ct. 723, 725, it is said:

"While it is possible that a speed of six miles an hour, even in a dense fog, may not be excessive upon the open ocean, and off the frequented paths of commerce, a different rule applies to a steamer just emerging from the harbor of the largest port on the Atlantic coast, and in the neighborhood where she is likely to meet vessels approaching the harbor from at least a dozen points of the compass. Under such circumstances, and in such a fog that vessels could not be seen more than a quarter of a mile away, it is not unreasonable to require that she reduce her speed to the lowest point consistent with a good steerage way, which the court finds in this case to be three miles an hour. The Southern Belle (Culbertson v. Shaw) 18 How. 584; The Bay State (McCready v. Goldsmith) Id. 89."

It is true that the collision did not occur while the Albany was proceeding under full speed, but the result of such speed was that her bow was brought within 150 feet of the Thirty-Fourth Street pier before it was discovered, and she proceeded thereafter under a speed of 6 or 7 miles an hour, with the flood tide running against her 4 or 5 miles an hour, and that, before she could be headed and brought away from her dangerous proximity to such piers, she came near the Thirty-Second Street pier, and struck the port side of the Newark, whose stern was only about 30 or 40 feet westward of said pier.

It is urged, however, that the Newark was in fault, because she gave no signals, and because her stern was allowed to swing such distance from the pier. If it be concluded that the Newark should have been tied up abreast of the Thirty-Second Street pier, in such manner that she made no angle with it, nevertheless she would have been in part across the course which the Albany was pursuing at the time of the collision, inasmuch as the Newark was some 63 feet in width, although such full width may not have obtained upon a stern measurement. Hence, while the collision on the port side of the Newark may have been caused by her swinging to the westward, yet a collision at some point apparently would have happened. Moreover, if the Newark was swinging to the extent stated, it does not follow that the manner of her fastening was negligent. She had been tied up temporarily in a fog, and if her stern would have been kept nearer to the pier by reliance upon a stern line, rather than upon the alleged influence of the flood tide, the question whether it was negligent to omit to use the stern line would depend upon her surroundings. Especially must her locality be considered in determining this question. The slips in the neighborhood of Thirty-Second street were not ferry slips, and those in charge of the Newark had no reason to expect the incoming of ferryboats at that point, and much less had they reason to anticipate

that vessels navigating the river, even in a fog as it then existed, would find their way, under the speed maintained by the Albany, in such close proximity to the piers.

It is herein that the case differs substantially from The Orange, 46 Fed. 408. There the tug and her barge alongside were tied to a pier, in obstruction to the use of a known and frequently used ferry slip, a few minutes before the ferryboat which collided with her came along. It is stated that the tug might have gone inside the slip, but that she rather made fast to the end of the pier, with her bow loose and angling outward two or three points, and in that position the ferryboat ran upon the barge, which was visible only 100 to 200 feet before she was struck. Hence, the tug and her barge were tied up at a point where ferryboats were coming and going, and where their arrival should have been anticipated by those in charge of the tug, and she occupied in silence, in a dense fog, a position where she was directly in the way of navigating vessels. The pilot of the ferryboat had no reason to suppose that the tugboat would be put in at the upper end of that pier, so as to obstruct the entrance to the slip.

In the case at bar the Newark was tied up at a point unfrequented by ferryboats, entirely out of their course, and out of the usual course of ferryboats operating between Weehawken and Franklin street. Had the Albany, in this case, been bound for a slip near Thirty-Second street, or had the captain of the Newark any reason to anticipate the arrival of vessels at that point, some better method, if one existed, of keeping the stern near to the pier line, might have been required, and signals announcing that she had appropriated the way of other vessels would have been required. While the dangerous position taken by the tug in the case of The Orange required her to give signals to warn ferryboats which were known to be proceeding to a neighboring slip, yet certainly the signals were not required in the present case, as such vessels were not expected, and in due course would not come into the vicinity. The accident was caused entirely by the Albany proceeding, under a dangerously high rate of speed, pointed directly for the piers on the New York side, and thereafter proceeding at a lessened, but still dangerous, rate of speed, before her bow was turned sufficiently from such piers.

It seems to the court that such negligence was the proximate, and, under the particular facts presented, the sole, cause of the injury. Therefore the libelant should have a decree for damages, with costs.