THE CHICAGO. THE PENCOYD. THE ASHBOURNE. THE TOWNSEND.

(District Court, S. D. New York. December 27, 1904.)

COLLISION—FERRYBOAT AND TOW—EXCESSIVE SPEED IN FOG.

A ferryboat, which, on leaving her slip in Jersey City in a dense fog, ran into and sank a canal boat constituting a part of a large tow passing in front of the piers bound to a wharf in the vicinity, *held* in fault for the collision on the ground of excessive speed and because she did not hear the fog signals of the tugs. The tugs also *held* in fault for not having sufficient power to handle the tow with reasonable dispatch, thereby obstructing the ferry slips.

[Ed. Note.—Collision rules, speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

In Admiralty. Suit for collision.

James J. Macklin, for libellant.

Robinson, Biddle & Ward, for ferry boat Chicago.

James Armstrong and Pierre M. Brown, for tugs Pencoyd, Ashbourne and Townsend.

ADAMS, District Judge. This action was brought by the Bowns Pattison Transportation Company, the owner of the canal boat Eliza, to recover the damages sustained through the sinking of that boat, with cargo of coal, on the 2nd day of March, 1904, by collision with the ferry boat Chicago, off the Pennsylvania Railroad Company's ferry slips, Jersey City. The tugs were brought in by petition. A dense fog prevailed at the time. The tide was flood.

The Eliza was the outer starboard boat of the 4th or 5th tier of a flotilla of 24 boats of the Reading Railroad Company, bound from Port Johnson to points in the East and North Rivers, in tow of the tug Ashbourne, on a hawser, with the tugs Pencoyd and Townsend to assist. When the upper bay was reached, the tow was about to be broken up but a dense fog came on and it was concluded by the tugs in charge that it would be better to defer distribution of the boats until the fog should lift. The tow accordingly kept on for the Packer Dock, Jersey City. This was passed in the fog and the locality of the tow not made out until it was in the vicinity of the ferries of the Pennsylvania Railroad Company, a few piers above. The Ashbourne then turned the tow through the west to the south and when straightened out down the river, a few hundred feet from the ends of the Jersey City piers, finding herself unable to hold the tow in the tide, she called upon the other two tugs for assistance. The three tugs were able to make some slight progress with the tow against the tide, probably at the rate of about a half a mile per hour. The result of the turning of the tow and the strong flood tide was that the tow for some time, at least half an hour, remained opposite the slips. Regular fog signals were blown by the tugs up to the time of the collision.

During the time the tugs were manœuvring, the ordinary operation of the ferries was interrupted by the fog and no regular trips were made by the boats. The Chicago should have left New York at 6:10 in the morning but did not get started until 6:16. She returned to New York and left again at 8:01, arriving at Jersey City at 8:12. She left Jersey City at 8:36 and this was the collision trip. On this occasion she started from her slip under a full speed bell but changed it to slow after going about 100 feet and continued that speed, according to her testimony, up to a few seconds before the collision. She was evidently going at a higher rate of speed than was prudent, in view of the dense fog, because, notwithstanding her reversed engine, she cut nearly through the libellant's boat, which was practically new and substantially built, and her cargo of about 500 tons of coal.

The Chicago did not hear the tugs' fog signals and the first warning of the tow being in her course, was some shouts from the boats in tow for the ferry boat to go back. The extent of the injury seems scarcely reconcilable with the very low speed at which the ferry boat claims she was going and, moreover, she was in fault for failing to hear the fog signals, which it is clearly shown were blown by the tugs

and heard on the tow, even aft of the tier in which was the injured boat. Although there is no obligation on the part of the ferry boats to suspend their navigation on account of a fog—The Orange (D. C.) 46 Fed. 408—yet it is incumbent on them to proceed cautiously, and in this case it was necessary that special care should be taken, in view of the fact that the presence of the vessels in the vicinity of the slips was known to the boats going in and out, including the Chicago. The tow had been avoided by two ferry boats, the Newark and the Washington, as well as by the Chicago in entering her slip shortly prior to the collision, and there seems to be no good reason, why the same caution should not have been observed when she left again for New York.

The tugs were brought in by the railroad company upon allegations: (1) that the fog signals required by law were not blown; (2) in endeavoring to handle the tow with only one tug and (3) in proceeding too near the pier head line on the Jersey shore. The first allegation is without merit as the evidence shows that the proper signals were given. The second and third are also without merit, in a strict sense, because three tugs were used and they were bound to a wharf in the vicinity and in that way justified in being in front of the slips. The tugs, however, were not warranted in obstructing the ferry slips an unreasonable length of time, even in a fog, and they must be held to have participated in the negligence which brought about the disaster, because of insufficient power to handle their tow with proper despatch.

Decree for the libellant against all the defendant vessels, with an order of reference.