## THE CITY OF LOWELL.

(District Court, S. D. New York. August 11, 1905.)

1. COLLISION—STEAMER AND FERRYBOAT—FOG.

A collision occurred in East river in the early morning between a ferryboat crossing from Brooklyn and a steamer passing down the river, in which the ferryboat was sunk. There was a fog so dense that a vessel could be seen only a few feet distant, and the ferryboat had stopped, or nearly so, to locate the position of her slip, when she was struck by the steamer with such force as to cut a hole several feet deep. Held, that the steamer was in fault (1) for being near the Manhattan shore, instead of in the middle of the river, and (2) for excessive speed in view of the fog, which made it dangerous to move at all unless at a speed so slow that the vessel could be stopped almost instantly. Also held that the ferryboat was not in fault.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 170, 172, 184.

Collision rules as to speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

2. SAME—RIGHT OF FERRYBOAT TO NAVIGATE IN FOG—CROSSING VESSELS.

A ferryboat running between Brooklyn and Manhattan has the right to navigate prudently and maintain steerageway even in a fog, and when nearing her slip the starboard hand rule for crossing cannot be invoked against her by another vessel.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 205.]

In Admiralty. Suit for collision.

James J. Macklin and La Roy S. Gove, for libellant.
Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. This action was brought by the Union Ferry Company of New York and Brooklyn to recover the damages sustained by its ferryboat Columbia from a collision with the steamer City of Lowell, about 7 o'clock in the morning of the 4th day of November, 1904, in the East River about off Wall Street. The tide was the first of the ebb and a dense fog prevailed. The Lowell, bound down the river, struck the Columbia, bound across the river, on the starboard side, just forward of the wheel and penetrated the hull.

The Columbia, a side wheel wooden ferryboat, 165 feet long, built 40 odd years ago, but kept in good condition, was making her first trip of the day from Brooklyn to Manhattan and left her slip at the foot of Montague Street, a little before 7 o'clock. Lying in the slip, she was heading about N. W. by W. and when she had gone out about 3 or 4 lengths, she turned somewhat to the starboard, so that she headed about North intending to make the upper slip at Wall Street, which required a change to the Westward somewhere near the end of the passage. She started under a jingle bell but reduced speed after clearing the slip so that she did not thereafter make more than about 3 miles per hour and when she reached the vicinity of Manhattan, as her navigators judged by the sounds heard by them coming from there, she stopped. Hearing the sounds of a vessel in her immediate vicinity, she backed but before her engines had much effect the collision occurred.

The Lowell was a twin screw steel passenger vessel, built in 1894, 322 feet long, with a sharp stem. She had left New London the previous night, on a regular trip to pier 40 North River, New York. She met with some fog in the vicinity of New York, which delayed her a little. After passing through Hell Gate about 6:24 o'clock, where her speed was reduced, she proceeded at full speed again to the vicinity of 10th Street reef. Both sides of the river could then be seen, but on rounding Corlears Hook she encountered a dense fog, in which objects could not be seen more than about 100 feet. Her engines were stopped and fog signals sounded; in about a minute she proceeded again under one bell, but after making a few turns of her engines, she was again stopped and suffered to drift; such manœuvres were repeated and before reaching the Brooklyn Bridge, she exchanged signals of one blast with a ferryboat, presumably belonging to the Catherine Ferry, and passed under her stern; the bridge being reached, she passed, it is claimed, under the centre of it, probably a little on the Brooklyn side; she was then given a compass course of S. W. by W. ½ W., her engines being stopped and then given a few turns ahead. She then heard a whistle, rather on her starboard bow, of a ferryboat apparently bound for Brooklyn and being very close, the Lowell's engines were backed; the ferryboat passed from the Lowell's starboard to port, without even her loom being seen. This boat has since been identified as the Fulton of the Fulton Ferry Line, which was bound for New York, and having missed the New York slip she desired to make, backed out, the pilot going to the pilot house on the Brooklyn end. It was

while this manœuvre was being made that she crossed the bow of the Lowell under the signals of one whistle. After the Fulton had in such way passed the Lowell, the latter put her engines ahead again, when a whistle was heard twice on the port bow and the sound of paddles and the Lowell's engines were put at full speed astern and were in that motion for an estimated period of ¾ of a minute, when the outlines of the Columbia appeared a little to port of ahead and perhaps 40 feet distant.

The collision happened almost immediately, the Lowell striking the Columbia on the starboard side of the New York end, making a V shaped wound about 25 feet deep on the forward part and 16 feet on the after part, where the break was about 8 feet forward of the wheel. The cut ran in to the hull from 1½ feet below the water line to above the deck. At the deck it went in about 6 feet and at the lowest point 7½ feet down, to 8 inches wide, where it went considerably less, owing to the cutting away of the Lowell's stem and the turn of the Columbia's bilge. The angle of the collision, as shown by the wound, was about 5½ points or 60 degrees.

The Lowell kept her stem in the wound by moving ahead and the boats were held together by a line. They remained together about 40 minutes, during which time the Lowell pushed the Columbia till she sank near the Atlantic Avenue Ferry, Brooklyn. During this time the passengers and crew of the Columbia were taken on the Lowell and then landed, after which the Lowell proceeded to her own pier.

The amount involved is large and the controversy between the parties has been strenuously contested. They charge each other with faults as follows:

As against the Lowell:

1. That she had not a proper competent and sufficient lookout.

2. That she was navigating at an excessive and unreasonable rate of speed.

3. That she did not sound the whistles required by law.

4. That she came down the river close to the piers on the Manhattan side, instead of proceeding in the middle of the river.

5. That she did not stop and back in time.

As against the Columbia:

1. That she had the Lowell on her starboard hand and was bound to avoid her and the burden of exculpation is upon her.

2. That she had no proper lookout.

3. That her pretensions regarding slowing her speed and stopping are not entitled to credit.

4. That the collision was in mid river and not close to the New York slip.

5. That she did not sound proper whistles.

To determine the fault or faults which lead to a collision in such a dense fog as prevailed here is difficult but I think the circumstances indicate that the principal fault was with the Lowell in navigating nearer to the Manhattan shore than was prudent or justifiable. Of course she contends that she was not near the shore but

had taken a S. W. by W. ½ W. course from the bridge and thus kept in the middle of the river. It appears that the Columbia had gone across until those on her heard the shore sounds, the voices of men on the docks, the noise of hoisting engines on the shore or on the vessels loading or discharging at the piers, and the squeak of the fog bell, and estimated therefrom that she was within a short distance of the shore. Her contention in this respect is sustained by the testimony of the pilot of the Fulton, which on her first attempt to make her slip reached within about 75 feet of the Manhattan piers and thereby finding herself out of position, backed off so that she was perhaps two lengths, or about 330 feet from the ends of the piers. It was after she had stopped backing that the Lowell passed between her and the Manhattan shore. This witness particularly impressed me with the truthfulness of his statements and in view thereof and the testimony of those on the Columbia, the conclusion necessarily follows that the Lowell was in a place in the river prohibited by law in being so far away from the middle. The Hartford (D. C.) 125 Fed. 559, affirmed March 7, 1905. It is possible that even if the Lowell had passed under the centre of the bridge, as her witnesses testify, that she was thereafter set over to the Manhattan side by the ebb tide, perhaps when she was under slight headway, without the knowledge of those navigating her, but whatever the fact may be in such connection, there seems to be no reasonable doubt that she was there and so violating the law, thus producing the collision.

In arriving at this conclusion, I have not overlooked the claimant's argument:

(1) That the angle of collision indicates no change of course by either vessel, i. e., the Columbia not having changed her heading of North and the Lowell hers of S. W. by W. ½ W.

It is true that the Columbia was heading North but the indicated heading of the Lowell is not inconsistent with a position near the shore although it is with her own contention that she passed under the Brooklyn side of the bridge and kept the stated course. It seems that she was either mistaken in the view that she passed under such part of the bridge, or in having kept her course. If she were set over by the tide, while keeping her heading, it would perhaps account for and reconcile the apparent discrepancies. But in any event, there does not seem to be anything in the argument tending to overcome the credible testimony about the position of the Columbia, near the Manhattan shore.

(2) That the time of the collision precludes the Columbia's claim.

It appears that the collision occurred shortly after 7:09 but that would have given the Columbia, having left Brooklyn a little before 7 o'clock, ample time to have reached the vicinity of her Manhattan slip at the time of the collision at slow speed. Her ordinary time in crossing to Manhattan in the ebb tide during clear weather is about 7 minutes. On this occasion, she probably occupied 12 or 13 minutes, so that although there was not as much time, occu-

pied in crossing, as she claimed, there was enough time to permit her to come over at the speed it appears she was navigated in.

Another fault of the Lowell was her speed. Taking the dense fog into consideration she should have gone at a much lower rate or not at all. While she was being navigated with a certain degree of care and caution, which might have sufficed to avoid accidents in ordinarily foggy weather, the condition of the atmosphere this morning precluded navigation except at such a very low rate of speed that the headway of a steam vessel could be almost instantly stopped. Vessels could only be seen a short distance away, estimated at 40 feet at the time of collision. It is obvious that the Lowell going at the rate she probably was, was moving at great risk to other vessels with passengers and herself. She was going ahead until the Columbia was made out and then her reversing did not have much, if any, effect upon her headway, as shown by the extent of her penetration of the substantial woodwork of the Columbia and by the considerable listing of the latter to port, caused by the contact, notwithstanding a reversal of her engines at full speed for an estimated period of $3/4$ of a minute. It seems clear that the Lowell was moving ahead faster than was prudent under the circumstances.

The respective lookouts are criticised but I see no reason to place any fault upon either vessel for any such defect. If the lookouts had seen and reported more than they did, it would doubtless have been more in accord with some of the decisions, but they seem to have been fairly able men properly stationed and performing their duties with reasonable efficiency.

The signals of the vessels are also criticised but they do not seem to have any bearing upon the collision. There does not appear to be any authority or excuse for the Lowell to have given signals of three blasts when drifting, according to her claim, but they did not mislead the Columbia in any way, nor did the latter's signals of four blasts to her bell man on the pier in New York mislead the Lowell. Both gave sufficient fog signals, which the other heard in due time. It is not necessary in view of such fact to consider the matter further.

Both vessels reversed before the collision. The Columbia was substantially stopped when the Lowell appeared and her reversing had little effect owing to the short period during which it prevailed. The Lowell reversed, her witnesses say, $3/4$ of a minute before the collision, nevertheless her headway was not then completely stopped, indicating, as I have above found, a greater degree of speed than she should have been running at under the circumstances. The delay in reversing is doubtless a fault but is merged in that of proceeding too fast.

It only remains to consider the fault charged against the Columbia of not avoiding the Lowell under the starboard hand rule. It appears that the Columbia had had ample time to get fully across the course of the Lowell if the latter had been in the proper part of the river. The Columbia can scarcely be deemed in fault for

being in the way of the Lowell, when near her Manhattan slip. She was not, under the circumstances, subject to the rule invoked.

The Columbia had a right as a ferryboat to navigate prudentlv and maintain steerage way even in a fog—The Orange (D. C.) 46 Fed. 408, 410; The Whitehall (D. C.) 68 Fed. 1022; The Chicago (D. C.) 134 Fed. 1013, 1014—and I fail to see that she neglected her duty in any way.

Decree for the libellant, with an order of reference.