# THE NACOOCHEE.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 87, 88. Argued November 24, 1890. — Decided December 8, 1890.

In a collision, in a dense fog which hung low down over the water, in the Atlantic Ocean off Cape May, between a steamer and a fishing schooner, the steamer was going at half-speed, between six and seven knots an hour, and the schooner about four knots an hour. When so running, the steamer would forge ahead 600 to 800 feet after reversing her engines, before beginning to go backwards. The steamer first sighted the schooner when the latter was about 500 feet distant. The schooner first sighted the steamer when 400 to 500 feet distant. The steamer reversed her engines full speed astern, in about 12 seconds, but did not attain backward motion before the collision. The bow of the steamer struck the port quarter of the schooner about 10 feet from the taffrail, and sank her. The steamer on a north half east course, had overhauled and sighted the schooner, on a north-northeast course, with the wind south southeast, about an hour before, and had passed to the eastward of her, and heard her fog-horn. Thinking she heard cries of distress to the starboard, the steamer ported and changed her course 13½ points, to south-southeast. The schooner had on deck one man at the wheel, and one man forward as a lookout and blowing the fog-horn, and 14 men below. The schooner kept her course. Her fog-horn was heard by the steamer, before the steamer sighted her: *Held,*

(1) Under Rule 21, of § 4233 of the Revised Statutes, the steamer was in fault for not going at a moderate speed in the fog;

(2) She was, under the circumstances, bound to observe unusual caution, and to maintain only such a rate of speed as would enable her to come to a standstill, by reversing her engines at full speed, before she should collide with a vessel which she should see through the fog;

(3) The schooner was not sailing too fast, and she blew her fog-horn properly, and she was not in fault for keeping her course, her failure to port being not a fault but, at most, an error of judgment *in extremis,* due to the fault of the steamer;

(4) As the Circuit Court did not find that the absence of another lookout on the schooner contributed to the collision, and, so far as the

findings were concerned, the man forward on her properly discharged his double duties, there was no lack of vigilance on the part of the schooner in the matter of a lookout;

(5) The testimony not being before this court, it cannot consider exceptions to the refusals of the Circuit Court to find certain facts;

(6) As the District and Circuit Courts found both vessels in fault, and gave to the schooner only one-half of her damages, this court reversed the decree of the Circuit Court, and ordered a decree for the schooner for the full amount of her damages, with interest, and her costs in both of the courts below, and in this court.

THIS was a libel in admiralty, filed in the District Court of the United States for the Southern District of New York, by Edward S. Moseley and others, as owners of the fishing schooner Lizzie Thompson, against the steamer Nacoochee, to recover damages for the loss of the schooner and her outfit and the property on board of her, in consequence of her being sunk by a collision with the steamer, in March, 1883, in the Atlantic Ocean, off Cape May in the State of New Jersey.

The libel alleged negligence on the part of the steamer and absence of fault on the part of the schooner. The collision took place in the daytime in a fog. The answer of the steamer alleged that she was not in fault, and that the collision was due to negligence on the part of those on board of the schooner, in not having the fog-horn properly sounded and in not putting the helm of the schooner hard a-port when the steamer was seen to be within forty or fifty feet from her. After issue joined, the libel was amended by joining as libellants the master and crew of the schooner, for the loss of their personal effects. The case was heard by Judge Brown, and he made an interlocutory decree that the libellants recover one-half of their damages, his opinion being reported in 22 Fed. Rep. 855. On the report of a commissioner, a decree was entered in the District Court, May 19, 1885, in favor of the libellants for $5379.14, being one-half of their damages, namely, $5110.57, and their costs $256.65, and $11.92 interest.

Both parties appealed to the Circuit Court, where the case was heard before Judge Wallace. His opinion is reported in 24 Blatchford, 99, and 28 Fed. Rep. 462. He filed the following findings of fact and conclusions of law, which are con-

tained in the report in 24 Blatchford, but not in the report in 28 Fed. Rep.:

· "*Findings of facts :* 1. The steamship Nacoochee, belonging to the claimants, is a propeller of about 3000 tons burden and about 310 feet long. Her propeller is a right-handed propeller, and her engines are compound and reversed by steam, and can be so reversed in 12 seconds. At full speed her propeller makes 62 revolutions a minute, and the speed attained is between 13 and 14 knots an hour. When running at half speed she would forge ahead 600 to 800 feet, after reversing her engines, before beginning to go backwards.

"2. On the 16th of April, 1883, she was bound on her regular voyage from Savannah, Georgia, to the city of New York. She was in all respects in good order, well and sufficiently equipped and manned with competent officers and men, and was blowing her fog-whistle at least once a minute. The wind was moderate and the sea calm, but a dense fog hung low down over the water. At about half-past one or two o'clock in the afternoon of that day, as she was on her usual course, north half east, off Cape May, about 10 miles to the southeast of the Five Fathom light-ship proper, and going at half speed, between six and seven knots an hour, and making 30 revolutions of the propeller to the minute, she overhauled and sighted the schooner Lizzie Thompson, and passed to the eastward of her, at a distance of about two or three hundred yards. The Lizzie Thompson, owned by the libellants, was a fishing schooner, returning from the fishing grounds, with a full fare of fish, and bound for New York, having on board sixteen men at the time the Nacoochee passed her. She was going about four knots an hour, with all sails set, upon a course of north-northeast, with the wind south-southeast, blowing at the rate of 8 to 10 miles an hour. But two men were on the schooner's deck, A. J. Small, one of them, acting as a lookout and blowing the fog-horn, and Samuel Kimball, aged twenty, at the wheel. The other fourteen men were all below deck.

"3. At this time, when the Nacoochee was passing the Lizzie Thompson, the fog-horn of the schooner was heard upon the steamer and the steamer's whistle was heard by those

on the schooner. Most of the schooner's crew came on deck and saw the steamer till she disappeared ahead in the fog, and then went below. The steamer continued her course north half east until those on board heard what they supposed to be cries of distress on their starboard beam. This was about half-past two o'clock. These cries were heard by the captain and others on board the steamer. After some conference with respect to these cries, and several persons agreeing as to their apparent character, the steamer's helm was put hard to port, and she swung around until she headed a south-southeast course, when her helm was steadied. Very soon afterwards the schooner Lizzie Thompson was suddenly sighted, looming up in the fog on the steamer's starboard bow, about 500 feet away.

"4. The captain of the steamer immediately ordered the engines reversed full speed astern, which orders were immediately obeyed and put into execution within about 12 seconds, but a collision occurred between her and the Lizzie Thompson, the schooner's port quarter aft of the main chains and about ten feet from the taffrail colliding with the bow of the Nacoochee, which penetrated two or three feet into the schooner, causing the schooner to sink in a very few moments. All her crew were saved and taken on board the steamer, which then resumed her former course N. ½ E., and pursued her way to New York, arriving there the next morning.

"5. The Lizzie Thompson had continued on her course of north-northeast, after the steamer passed her for the first time, without change up to the moment of collision. The fog continued and was dense, and the same men were on deck, Samuel Kimball at the wheel and A. J. Small on the watch and blowing the horn, and all the others were below deck, including her captain, sitting around. All the sails were set, and she was sailing at the rate of about four miles an hour.

"6. Just before the collision Lookout Small, on the schooner's deck, saw the steamer appearing through the fog and bearing down on them on their port side, about 400 to 500 feet off. He then shouted, 'A steamer is coming into us,' and the men below then came upon deck. Florence McKown, her

captain, who sat in the cabin, when he heard the watch sing out, ' A steamer is coming into us,' told the man at the wheel to keep his course, and jumped on deck, and saw the steamer approaching on the port quarter. No change was made in the schooner's helm, and she continued her north-northeast course up to the very moment of collision.

" 7. After the steamer had turned to go to the supposed cries of distress the captain took his position in front of the pilot-house. A seaman, Andrew Johnson, was on the lookout, standing right up forward as far as he could get; the second officer was on watch in the pilot-house; and the quartermaster was at the wheel. All of them heard the fog-horn of the schooner and immediately after saw the schooner appearing through the fog off on the starboard bow, about 500 feet away. The captain gave his orders to back full speed astern, and took his position at the stem of the steamer and called out to those on board the schooner, ' Port the helm.'

" 8. That, when a screw vessel like the Nacoochee is going through the water at the rate of six miles an hour, and the engines are reversed ' full speed astern,' porting the helm or starboarding the helm has no effect at all on the vessel while she is still going ahead. The Nacoochee had not attained backward motion when she struck the schooner.

" 9. That, immediately before the collision, the two vessels did not sight each other through the fog at the same moment, but that the Nacoochee first sighted the Lizzie Thompson when the latter was about 500 feet distant and the Lizzie Thompson first sighted the Nacoochee when 400 to 500 feet distant.

" *Conclusions of law :* 1. That the steamship Nacoochee was in fault, contributing to this collision, for not going at moderate speed in a fog.

" 2. That the schooner was in fault, and in this respect, namely, that she was sailing too short-handed in the fog, and was guilty of negligent navigation in having but one man forward charged with the double duties of a lookout and blowing the horn, and one man astern, who was a youth of 20 only, at the wheel, all the other fourteen men, including the captain, being below deck.

" 3. The decree of the District Court is affirmed, without costs of this court to either party."

The claimant of the steamer filed six exceptions to the refusal of the court to find certain facts as prayed by the claimant, such exceptions being based on the ground that the facts so requested to be found were proved by the evidence and not contradicted by any material evidence in the case, and that, therefore, the refusal of the court to find the same was an error of law, as a finding against the evidence. The claimant also excepted to the first conclusion of law and to certain findings of fact as being unsupported by any evidence; also to the refusal of the court to make four several conclusions of law, as prayed for — (1) that the steamer was not in fault as contributing to the collision; (2) that the schooner was in fault, because she was sailing at the rate of five miles an hour before the wind, with every sail set, in a dense fog; (3) that the schooner was guilty of negligent navigation, because, immediately before the collision, she did not port her helm in order to avoid immediate danger, when by so doing she could have escaped the collision, and that Rule 24 required her to depart from Rule 23 on the occasion, and that she was not justified in keeping her course up to the moment of collision; (4) that the libel should be dismissed, with costs of the District and Circuit Courts. There was a bill of exceptions, setting forth the foregoing exceptions, but none of the testimony is embodied in the transcript of the record.

A final decree was made by the Circuit Court, that the libellants recover one-half of the damages sustained by them, amounting to $5110.57, with interest from May 19, 1885, being $421.60, and their costs in the District Court, taxed at $256.65, amounting in all to $5788.82. As both parties had appealed, no costs of the Circuit Court were given to either of them. From the decree of the Circuit Court both parties have appealed to this court.

*Mr. Nathan Bijur* for the steamship Nacoochee.

I. There is one element in this case which must be borne in mind, and which colors all the facts and distinguishes it from

all other cases of collision involving the question of speed, and that is that the Nacoochee turned about to save life, and was on a life-saving errand when the collision occurred. It was evident that she had not only the right to change her course, but it was her duty to do so when supposed cries of distress were heard. *The Boston,* 1 Sumner, 328, 335 ; *The George Nicolaus,* Newberry Adm. 449, 451; *The Edwin Hawley,* 41 Fed. Rep. 606.

The Nacoochee being on an errand to save life, and turned in the direction of the cries, was compelled to proceed expeditiously, and so had to maintain speed enough for that purpose. The 23d rule expressly provides that all rules must be construed in reference to any special circumstances which may render a departure from the other rules necessary ; and in considering, therefore, whether the steamer was guilty of violating the rule which prescribes that vessels shall go at moderate speed in a fog; regard must be had to the fact that she was engaged in a service which required her to move as promptly as possible. As was said in *The Leland,* 19 Fed. Rep. 771 : "What is a moderate and what is a dangerous rate of speed are, of course, to some extent comparative terms, depending upon the surrounding circumstances."

It is of course admitted that the fact that she was engaged in trying to save life would not authorize the steamer to forge ahead at full speed and discharge her from any obligation to observe due precautions to avoid vessels which might be in the neighborhood. But nothing of the kind appears in this case. On the contrary, it is expressly found by the court that she was going only at half speed, that she could be stopped within 800 feet, and that the strictest lookout was kept.

The court below cites, to support its view that there was no moderate speed in this case, the rule laid down in *The Batavier,* 40 Eng. Law and Eq. 9, 25, which has been quoted with approval by this court in the case of *The Colorado,* 91 U. S., on page 703. That rule says: "At whatever rate she (the steamer) was going, if going at such a rate as made it dangerous to any craft which she ought to have seen and might have seen, she had no right to go at that rate."

Opinion of the Court.

We claim that that rule could only be invoked against us if it were shown that it was possible for us to have known that at our rate of speed other vessels could not be seen within the distance necessary to stop the ship. If the mere fact that a collision occurred because the steamer could not be stopped is evidence that the steamer was running at a speed which under the circumstances was not moderate, then the consequence would be that in every case of collision the steamer must be held to have contributed to the accident and to be liable for at least half the damages.

II. The schooner was at fault, in not keeping a sufficient lookout, and having a boy of only slight experience at the helm. Where there is a crew of sixteen persons, and fourteen, including the captain, are below, and although there is a fog, only one man is charged with the duty both of sweeping the horizon on all points of the compass and blowing the fog-horn, it certainly is strange to claim that when a collision occurs the steamer, which kept the best possible lookout, is at fault, and the schooner is not.

*Mr. Wilhelmus Mynderse* for the libellants.

Mr. Justice BLATCHFORD, after stating the case as above reported, delivered the opinion of the court.

It is contended for the steamer that she was not guilty of any neglect in going at the rate of speed found. Her full rate of speed was between thirteen and fourteen knots an hour. When she first overhauled the schooner her speed was between six and seven knots an hour, and she kept up the latter speed until she reversed her engines on suddenly sighting the schooner in the fog, about five hundred feet away. At the time this collision took place the rules of navigation found in section 4233 of the Revised Statutes were in force. By Rule 15, whenever there was a fog or thick weather, whether by day or night, a sail-vessel under way was required to sound a fog-horn at intervals of not more than five minutes. By Rule 20, "If two vessels, one of which is a sail-vessel and the other a

steam-vessel, are proceeding in such directions as to involve risk of collision, the steam-vessel shall keep out of the way of the sail-vessel." By Rule 21, "Every steam-vessel, when approaching another vessel, so as to involve risk of collision, shall slacken her speed, or, if necessary, stop and reverse; and every steam-vessel shall, when in a fog, go at a moderate speed." By Rule 23, "Where by Rules seventeen, nineteen, twenty, and twenty-two, one of two vessels shall keep out of the way, the other shall keep her course, subject to the qualifications of Rule twenty-four." By Rule 24, "In construing and obeying these rules, due regard must be had to all dangers of navigation, and to any special circumstances which may exist in any particular case rendering a departure from them necessary in order to avoid immediate danger."

It is urged on the part of the steamer, that, in determining the question whether her speed was a moderate one in the fog, it is to be considered that she supposed she was on a life-saving errand, and was hastening towards what she thought were cries of distress, which required her to move as promptly as possible. It is found as a fact that, when running at half speed, as she was, she would forge ahead 600 to 800 feet, after reversing her engines, before beginning to go backwards; and that she had not attained backward motion when she struck the schooner. This, it is contended, was a moderate speed. It is urged, that if the master of the steamer thought that the fog was of such a character that he could see a vessel at a distance of about 800 feet, and it turned out that the fog was more dense than he thought it to be, he committed merely an excusable error of judgment, and was not guilty of negligence. But we cannot regard these views as controlling. The steamer was bound to keep out of the way of the schooner, and the burden rests upon her to show a sufficient reason for not doing so. She must be held wholly responsible, unless she shows a fault on the part of the schooner which contributed to the collision, or that it was due to unavoidable accident. The latter is not shown, and it is shown that the steamer was not going at a moderate speed in the fog. It is found that the steamer first sighted the schooner when the latter was about

500 feet distant, and that the fog was dense and hung low down over the water. The steamer, from her own course and that of the schooner, when the former overhauled and passed the latter, must have known, by the lapse of time before she heard the supposed sounds of distress, that, when she changed her course, by porting, 13½ points, to south-southeast, it was quite likely she would encounter the schooner. She was bound, therefore, to observe unusual caution, and to maintain only such a rate of speed as would enable her to come to a standstill, by reversing her engines at full speed, before she should collide with a vessel which she should see through the fog. This is the rule laid down by this court in the case of *The Colorado*, 91 U. S. 692, 702, citing *The Europa*, 2 Eng. Law & Eq. 557, 564, and 14 Jurist, pt. 1, 627, and *The Batavier*, 40 Eng. Law & Eq. 19, 25, and 9 Moore P. C. 286. The rule laid down in the last named case is that, at whatever rate a steamer was going, if she was going at such a rate as made it dangerous to any craft which she ought to have seen, and might have seen, she had no right to go at that rate. See also *The Pennsylvania*, 19 Wall. 125, 134.

The rule is still maintained, and is expressed as follows, in article 16 of section 1 of the act of August 19, 1890, c. 802, entitled " An act to adopt regulations for preventing collisions at sea:" " Art. 16. Every vessel shall, in a fog, mist, falling snow, or heavy rain-storms, go at a moderate speed, having careful regard to the existing circumstances and conditions."

In the present case, the steamer discovered the schooner on her starboard bow, about 500 feet away, looming up in the fog. The speed of the schooner was about four knots an hour and that of the steamer between six and seven knots, the combined rate being over ten knots an hour, or over 1000 feet a minute; so that, at a distance apart of 500 feet, the vessels, at the combined speed, were not over half a minute apart. The steamer's engines could be reversed in twelve seconds; but, although they were reversed at full speed astern, she had not attained backward motion when she struck the schooner. This was not the moderate speed required by the statute. During the twelve seconds necessary to reverse the engines the steamer

would progress ahead 200 feet, leaving the distance between the vessels at the time the steamer commenced to back only 300 feet.

Both of the courts below found the schooner to be in fault. The fault found by the Circuit Court was that the schooner was sailing too short-handed in the fog, and was guilty of negligent navigation in having but one man forward, charged with the double duties of a lookout and blowing the fog-horn, and one person astern, a youth of only twenty, at the wheel, while all the other fourteen men, including the master, were below deck. In addition, it is contended here for the steamer, that the schooner was sailing too fast in the fog, and that she kept her course, instead of porting, when she sighted the steamer.

It is alleged, in the answer of the steamer, that the schooner was in fault in not putting her helm hard a-port when the steamer was seen to be within forty or fifty feet from her; but it is not averred in the answer that the schooner was sailing too fast in the fog. It is, however, alleged in the answer that the schooner was in fault in not having her fog-horn properly sounded; but this latter defence cannot be maintained, because it is found by the Circuit Court that the officers of the steamer all of them heard the fog-horn of the schooner before they saw her.

It is contended that the schooner could have avoided the collision by porting her helm when she saw the steamer. But it was the primary duty of the schooner, under Rule 23, to keep her course; and, when her master was notified of the approach of the steamer, he told the man at the wheel of the schooner to keep his course, and no change was made in her helm up to the very moment of collision. Even if it was an error of judgment in the schooner to hold her course, it was not a fault, being an act resolved upon *in extremis*, a compliance with the statute, and a manœuvre produced by the fault of the steamer. *New York & Liverpool Steamship Co.* v. *Rumball,* 21 How. 372, 383; *The Nichols,* 7 Wall. 656, 666; *The Carroll,* 8 Wall. 302, 305; *The Elizabeth Jones,* 112 U. S. 514, 526; *The Bywell Castle,* 4 Prob. Div. 219.

In regard to the alleged fault of the schooner in sailing too short-handed in the fog, and having only two men on deck, one of them forward, charged with the double duties of a lookout and blowing the horn, and one astern at the wheel, it is not found by the Circuit Court as a fact that the absence of another lookout contributed to the collision, nor are any facts found which can justify that conclusion, either as fact or law. So far as the findings are concerned, the man forward properly discharged his double duties. He blew the fog-horn and it was heard on board the steamer, and it is not found that he did not blow it properly or in accordance with the statute. Nor is it found that he could have performed the duties of a lookout better than he did, or that any different manner of performing those duties, either by him or an additional lookout, could or would have made any difference in the result, or that the steamer would or could have been seen by the schooner any sooner than she was seen. The finding is that the steamer first sighted the schooner when the latter was about 500 feet distant, and the schooner first sighted the steamer when 400 to 500 feet distant. The schooner being low in the water and the fog hanging low down over the water, it was, of course, denser on the deck of the schooner than it was on the higher deck of the steamer, and those on the steamer naturally would see the masts and sails of the schooner up in the lighter fog before the vision of the lookout on the schooner would penetrate the denser fog which enveloped him. Under all these circumstances, and in view of the actual findings, it cannot be held that there was any lack of vigilance on the part of the schooner in the matter of a lookout. *The Farragut*, 10 Wall. 334; *The Fannie*, 11 Wall. 238, 243; *The Annie Lindsley*, 104 U. S. 185, 191.

Nor is there anything in the suggestion that the schooner was sailing too fast. It is not so averred in the answer or found by the Circuit Court.

The exceptions to the refusals of the Circuit Court to find certain facts cannot be considered, because the testimony is not before us. *The Francis Wright*, 105 U. S. 381. The excep-

tions to the refusal to find certain conclusions of law are considered sufficiently in what has been said already.

> *The decree of the Circuit Court is reversed, and the case is remanded, with a direction to enter a decree for the libellants for ·the full amount of their damages, with interest from the date of the report of the commissioner in the District Court, and for their costs in the District Court and in the Circuit Court, and in this court, on both appeals.*