## THE WHITEHALL.

### BRIGGS v. THE WHITEHALL.

(District Court, S. D. New York. June 11, 1895.)

COLLISION—FERRYBOAT AND LIGHTER—FOG—SIGNALS NOT HEARD.

The sail lighter B. left her wharf near the Hamilton Avenue Ferry, Brooklyn, in the morning, in a light wind to go down the East river against the flood tide; soon afterwards she was enveloped in a thick fog when abreast of Governor's Island, and in the usual track of the ferryboats. She blew horns which were not heard on the ferryboat W. as she approached at a moderate speed, and collision ensued. *Held*, upon the evidence, that there was no fault in the ferryboat; that the W. was justified in starting in fog, and that prudence required the lighter, in that situation, to haul nearer the Governor's Island shore, and the libel was dismissed without costs.

This was a libel by Marvin Briggs, owner of the lighter M. S. Bernite, against the ferryboat Whitehall, to recover damages for a collision.

Alexander & Ash, for libelant.

Hyland & Zabriskie (Chas. M. Hough, of counsel), for respondents.

BROWN, District Judge. At about 7:40 o'clock of October 20, 1894, as the ferryboat Whitehall was making her trip from Hamilton avenue, Brooklyn, to her slip at the Battery, in a dense fog, she came in collision with the libelant's lighter M. S. Bernite, which was under sail, in a light breeze, in the first of the flood tide when abreast of Governor's Island and probably about one-third of the distance across the stream. The lighter had left the wharf at the Union Stores, about three blocks above the Hamilton Avenue Ferry, at a

little after 7 a. m. At that time the weather was clear. She was overtaken by dense fog some 10 or 15 minutes before collision.

The coming of a dense fog was perceived a few minutes before the lighter was enveloped in it. She was right in the path of ferryboats, and was proceeding very slowly. In that situation I think it was the duty of the lighter to remove herself from the necessary track of ferryboats, and towards the Governor's Island shore, and there come to anchor, as she might easily have done. This was a plain and simple means of avoiding certain danger to herself and to the ferryboats, which were under a public necessity of crossing from Brooklyn to New York.

The witnesses from the schooner testify that their fog horns were properly blown. It is certain that they were not heard upon the ferryboat, and that the ferryboat was also proceeding slowly. These facts are proved not only by the ferryboat's men, but by other trustworthy and expert witnesses, who were carefully listening for fog signals. Considering the eccentricities of sound in fog (The Lepanto, 21 Fed. 651, 656-658), I cannot, therefore, find the ferryboat in fault for not hearing the schooner's fog signals, if they were given; nor does the evidence show any excess of speed. The ferryboat was not obliged to stop navigation during the fog; no rule of navigation requires this. The public necessities require that traffic shall not be wholly discontinued, and I cannot find, upon the testimony, that the ferryboat was not going at as moderate speed as was practicable; so that if the collision is not to be deemed due to any remissness of the schooner, as to the sounding of fog signals, or in not putting herself out of the way of the known track of the ferryboats, it must be set down to unavoidable casualties of navigation.

Libel dismissed, without costs.

END OF CASES IN VOL. 68.