## THE LAMBS. THE RICHMOND.

### UNITED STATES v. CITY OF NEW YORK. CITY OF NEW YORK v. UNITED STATES.

(District Court, S. D. New York. April 9, 1926.)

1. Collision ⊜102—Collision between ferryboat and steamship in fog held due to faults of both vessels.

Collision off the ferryboat slips at Georgetown, Staten Island, in a dense fog, between a ferryboat from the city and a steamship *held* due to faults of both vessels; the ferryboat being in fault for maintaining excessive speed after entering the fog, and the steamship for allowing herself to drift near the ferry slips for 20 minutes after the fog commenced, instead of moving to anchorage grounds.

2. Collision ⊜100(2)—Ferryboats in fog must use due caution as to speed.

While the rule as to excessive speed in fog is not strictly applicable to ferry boats obliged to navigate in fogs, they are required to exercise due caution, where the presence of other vessels may reasonably be expected.

In Admiralty. Suit for collision by the United States, as owner of the steamship Lambs, against the City of New York, as owner of the Municipal ferryboat Richmond, with cross-libel. Decree dividing damages.

Emory R. Buckner, U. S. Atty., and Horace M. Gray, Sp. Asst. U. S. Atty., both of New York City.

George P. Nicholson, Corp. Counsel, of New York City (Charles J. Carroll, of Brooklyn, N. Y., and John T. Condon, of New York City, of counsel), for city of New York.

KNOX, District Judge. The above-entitled suits grow out of cross-libels filed by the owners of the steamer Lambs and the ferryboat Richmond, as a result of a collision between the two vessels, which occurred at about 4:30 p. m., on October 16, 1920, in the vicinity of Robins Reef Light, New York Harbor, during a dense fog.

The Lambs, a Shipping Board freighter, having a length of 411 feet and equipped with turbine engines, left Carteret, N. J., at about 3 o'clock p. m., bound for Pier 44, North River. She was light, and was assisted by two tugs, the Timothy D. Sullivan and the President. The latter was ahead on a tow line, and the former was alongside the Lambs on her port side. When the vessels reached the mouth of the Kill van Kull, at about 4:10 p. m., and were near the middle of the channel abreast the Baltimore & Ohio Railroad piers on Staten Island, they encountered a fog so thick that little or nothing could be seen. The tide, at the time, was ebb. The master of the Lambs ordered the engines stopped, and directed the President to withdraw the tow line and come alongside to starboard. This was done. From then on until just before the collision, the Lambs, aside from blowing fog signals at regulation intervals, did nothing but drift with her headway and the tide. When the boats came together, the freighter had little, if any, of her original headway. The tide, however, tended to carry her toward the municipal ferry slips at St. George. Had the vessel desired to maintain steerage way, it would have been necessary to maintain a speed of approximately 5 knots.

During the period within which the freighter encountered the fog and was drifting about, the Richmond was proceeding from her Manhattan slip, which she left at 4:07, towards her destination at St. George. At the time she left the Battery, the weather was clear, and she went ahead at full speed. Upon reaching Greenville Channel, the fog was observed, and the ferryboat began blowing appropriate signals, and put her engines at half speed. This was about 9 or 10 miles per hour. She thus proceeded until, rounding the bell buoy off Robins Reef, she was put at slow speed. This speed, when uninfluenced by the momentum of a headway of a higher rate of progress, is about 2 or 3 miles an hour. Under these conditions, the ferryboat went ahead for about a minute. One of her lookouts then reported a whistle close at hand on the starboard side. The engines were straightway put in reverse, and the speed of the boat was materially checked. It is doubtful, however, if headway was entirely checked before the Lambs loomed up in the mist 75 to 100 feet away. A moment more, and the starboard quarter of the ferryboat's overhang came into contact with the bow of the drifting freighter. The outer guard rail of the Richmond was smashed and indented, while a portion of the bow of the Lambs was twisted and bent somewhat to starboard.

The Lambs and the Richmond sighted each other at practically the same time, and the former, as well as the latter, attempted to back away. Due, however, to the fact that the turbine engines require nearly a minute before they will put a boat into reverse action, the freighter was probably not moving backwards at the moment of impact. Following the collision, the vessels backed away from each other without difficulty, and, it being ascertained that neither of them was injured below the water line, the Richmond circled around the starboard side of The Lambs, and proceeded to her slip on Staten Island, reach-

ing there, under a slow bell, in about three or four minutes. Each vessel now claims that the other is responsible for what occurred.

[1] In my opinion, fault is to be attributed to each vessel. That of the Richmond was the rate of speed at which she entered and continued to advance in a dense fog. The persons in charge of the boat could not see ahead for more than 100 yards, yet they drove her forward through a busy harbor, at about 9 or 10 miles an hour. It was not until the Richmond began groping for her slip that she was put under one bell. Her engines were going at slow speed for only a minute when the signal of the Lambs was heard close at hand. While the ferryboat's master then did all that it was possible to do, it was not sufficient, I think, to stop the vessel in time to avoid collision. The reason for this, I think, is due to the fact, which seems fairly plain, that the Richmond was carrying a headway of slow speed plus such momentum of the much higher rate of progress as remained with her over the minute that elapsed between the change from half speed to slow speed.

[2] It is true that the rule as to excessive speed laid down in the case of Nacooches, 137 U. S. 339, 11 S. Ct. 122, 34 L. Ed. 687, is not strictly applicable to ferryboats, for the reason that they are obliged, from public necessity, to navigate in fogs. The Orange (D. C.) 46 F. 408. They are, nevertheless, required to use that degree of caution which corresponds with the necessity of navigating in a dense fog, where other vessels are reasonably to be expected. See The Howard (D. C.) 30 F. 280. In this regard, I think the Richmond failed to discharge the duty incumbent upon her.

So far as the Lambs was concerned, her fault lay in drifting about in the neighborhood of the Staten Island ferry slips. When she came out of the Kill, her officers perceived, and should have thoroughly appreciated, the danger of her position under existing conditions. Instead of going into the anchorage that lies directly in front of the mouth of the Kill, they preferred to drift down into the busy lanes of the municipal ferry lines. Those in charge of the Lambs heard whistles on every side, and, notwithstanding, the vessel did nothing but drift for almost 20 minutes. She was not able to maneuver promptly in the presence of danger, and she had, I think, every reason to anticipate that which came to pass. Under the conditions existing at and shortly before the time of collision, it was the duty of the Lambs to get out of the ferryboat's track. See The Whitehall (D. C.)

68 F. 1022. The Lambs should therefore be held liable, in part, for the injuries occasioned by the collision.

A decree for half damages may be entered.