## Appeal of CENTRAL R. CO. OF NEW JERSEY et al.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 33.

1. Collision ⟨⟩105(7)—Contention of one of two ferryboats, colliding on trips in fog, that she was practically still off her slip, held established by weight of evidence.

The contentions of the ferryboat C. between which and the ferryboat P. there was a collision while they were crossing the Hudson in a fog, that when the P. was sighted the C. was lying just off her slip and practically still, waiting for the slip to be clear, *held* established by the more credible testimony and the weight of the evidence.

2. Collision ⟨⟩100(2)—Ferryboat at such speed in fog as to be unable to prevent collision after seeing other still in water held at fault.

That a ferryboat, colliding in a fog with another practically still in the water, was proceeding at a speed too great to enable her to stop within the distance at which she could see the other, *held* to place the responsibility on her.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the petitions of the Central Railroad Company of New Jersey, as owner of the ferryboat Plainfield, and of the New York Central Railroad Company, as owner of the ferryboat Catskill, for limitation of liability. From a decree granting limitation, and holding both boats at fault for collision, their owners appeal. Modified.

On the morning of February 3, 1923, in foggy weather, a collision occurred in the Hudson river between the ferryboat Plainfield, owned by the Central Railroad Company of New Jersey, and the ferryboat Catskill, owned by the New York Central Railroad Company, resulting in injury to persons and property. Each ferryboat owner filed a petition for limitation of liability, and filed its claim for damages to its own vessel in the proceeding of the other. Originally there was also a personal injury claim filed against each vessel, but by agreement between the petitioners this claimant was paid and withdrew from the proceedings. The two causes were tried together. Each ferryboat contended that its engines had been stopped before the other had been sighted; that it was

practically still in the water, or just gathering sternway, when the collision occurred; and that without fault on its part it was rammed by the other vessel traveling at excessive speed. The District Court found both vessels at fault and, damages having been fixed by stipulation, entered a final decree granting the limitation of liability and allowing each vessel a recovery of half of its damages against the other. Each has appealed. Modified.

Kirlin, Woolsey, Campbell, Hickox & Keating and Macklin, Brown, Lenahan & Speer, all of New York City (Robert S. Erskine and Horace L. Cheyney, both of New York City, of counsel), for appellant Central R. Co. of New Jersey.

Bigham, Englar & Jones, of New York City (Leonard J. Matteson, of New York City, of counsel), for appellant New York Cent. R. Co.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge. The evidence presented a sharp conflict of testimony on all of the important issues of fact, and, if the District Judge had made detailed findings, we should hesitate to disturb them. Inasmuch, however, as he made no comment on the credibility of any witness, and no finding of the specific facts upon which is predicated his conclusion that both vessels were at fault, we have found it necessary to examine the record and determine for ourselves, as best we can, the truth of the matter.

The Plainfield was on a trip from Communipaw, N. J., to her slip at Liberty street, New York. In a general sense, she crosses and comes up the Hudson river. The Catskill was on a trip from Weehawken, N. J., to her slip at Cortlandt street, New York. In a general sense, she was bound down the river. Her slip was the middle one of five slips which lie between Pier 13 to the north and Pier 11 to the south. The distance between these piers is about 500 feet. The Plainfield's slip was adjacent to and south of the New York Central slip, for which the Catskill was bound. On the end of Pier 11 is a fog bell of the Central Railroad of New Jersey. Another fog bell is located on the rack between the New York Central's slip and the Pennsylvania's slip adjacent on the north.

The collision occurred at a point close to the ferry slips above mentioned at about 8:55 a. m., Catskill's time. Her clock was probably somewhat slower than the Plainfield's, for the latter left Communipaw at 8:52 a.

m., her time, and her usual running time to her New York slip is about 7 minutes. In the vicinity of the slips the fog was very dense. Both vessels were blowing proper fog signals. When they sighted each other, they were, according to both captains, only about 75 feet apart on crossing courses; the Catskill having the Plainfield on her starboard bow. The tide was flood. After the collision each vessel proceeded to her slip.

As to the foregoing facts there is substantial agreement, but in respect to all other material facts the stories of the two ferryboats are in great conflict.

The Plainfield contends in her pleadings that the collision occurred about 200 feet off the end of Pier 11. The testimony of her wheelsman and her lookout is to this effect. Her master seems to place it a little farther north. He says he was headed straight for his slip, which he had in full view. He says, also, that, having previously stopped his engines, he was just drifting inshore when the Catskill suddenly appeared on his port side, coming with "good speed." He immediately put the engines full speed astern, and his boat was still in the water at the moment of impact. He testified that the angle of collision was a right angle, the bow of the Catskill striking the port side of the Plainfield about 45 feet from her bow. Four other members of the crew corroborated in various particulars the master's version of the events.

The witnesses for the Catskill locate the place of collision farther north, just off her slip. Her master says he fixed her position by the fog bell on Pier 11, which bore dead ahead, and the bell on the Pennsylvania rack, which was abreast of the pilot house. With her engines stopped, she was just stemming the tide and waiting for the ferryboat Utica to come out of the Catskill's slip. While the Catskill was lying in this position, the Plainfield suddenly appeared out of the fog, about 50 feet away and nearly abreast on the starboard side. The Catskill's engines were immediately ordered full speed astern, and were backing when the Plainfield rode over the Catskill on the starboard bow. After only a few turns of the propeller, the Catskill's stern struck the end of Pier 13, indicating that she was moving astern and close to Pier 13 at the moment of the collision. Immediately after the collision the Utica left the slip and passed across the bow of the Catskill. Four other members of her crew and five passengers on the Catskill corroborate various details of this version of the accident. There were seven of the Catskill's passengers,

called as witnesses for the personal injury claimant, whose testimony was less favorable to her.

[1] We are satisfied that the weight of the evidence fixes the location of the collision where the Catskill contends it was, rather than off Pier 11, as the Plainfield contends. The fact that the Catskill backed into Pier 13 immediately after the accident, and the fact that the Utica, in leaving the slip crossed her bow, give corroboration to the testimony of her crew and certain of her passenger witnesses as to her location. Furthermore, it seems inherently improbable that she would so far have lost her way as to have passed her slip and proceeded down to Pier 11 at good speed, because of the slip bell and the bell on Pier 11.

The location of the Catskill has a bearing on the disputed question of her speed. It gives probability to her story that she had stopped, waiting for her slip to be clear. Moreover, the only witnesses who can be regarded as disinterested are the passengers not involved in the collision as injured persons or as friends of the injured. They had no reason to favor the Catskill. On the other hand, had she been guilty of the negligence charged, they would have been likely to feel outraged and to testify willingly to her faults. Their testimony substantiates her story in many of its details, and particularly in respect to her cessation of nearly all speed when she got abreast of her slip. The character of the damage which she suffered also gives persuasive evidence that, if she was not actually moving backward at the moment of impact, her speed was much less than that of the Plainfield. The boats came together at an acute angle, and the overhanging guard of the Plainfield swept the starboard bow, shed, and deck of the Catskill, moving from aft forward. Not only do the witnesses so testify, but the photograph of the damage, particularly the bent davit, makes this very clear. Damage of this character is not, we think, consistent with the theory of the surveyor that the Plainfield was still and the Catskill the forward moving vessel.

[2] It is urged that Capt. Penney's report to the local inspectors refutes the Catskill's claim that she stopped her engines for a minute or two before the Plainfield was sighted, and contains an admission that she had too much headway, to avoid the collision. We fail to find any essential inconsistency between his testimony and his report. But at most the report would be but an admission, and subject to refutation by other testimony.

It would serve no useful purpose to review in detail all the testimony of the 26 witnesses. We have read it with care, but it suffices to say that we are satisfied that the more credible testimony and the weight of the evidence establish that the Catskill was practically still in the water when the Plainfield was sighted, and immediately thereafter started her engines full speed astern. We find that the Plainfield was proceeding at a speed too great to enable her to stop within the distance at which she could see the Catskill. Responsibility for the collision is therefore hers. The Rosaleen, 214 F. 252 (C. C. A. 2).

The decree must be modified, to exonerate the Catskill, and to hold the Plainfield solely responsible.