## THE TUXEDO.

### No. 328.

Circuit Court of Appeals, Second Circuit.

May 6, 1935.

John E. Morrissey, of New York City, for appellant.

Lynch & Hagen, of New York City (Charles W. Hagen and Henry C. Eidenbach, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The libelant, the owner of the ferryboat Binghamton, sued to recover the damages sustained by that boat when it was in collision with the ferryboat Tuxedo, owned by the claimant, while navigating in a dense fog off the Delaware, Lackawanna & Western Railroad Pier No. 5 at Hoboken, N. J., on the night of February 8, 1928.

The facts were found by the trial judge from conflicting evidence given by witnesses in open court and we accept those findings. They are to the effect that the collision occurred from 400 to 500 feet off the pier end at a time when there was a visibility of only from 75 to 100 feet. The vessels were on converging courses, neither being ahead of the other, which had developed after the Binghamton had left the above-mentioned pier at 9:10 p. m. and had turned south by west on her regular course to Barclay street, New York. The Tuxedo had previously left her slip at Twenty-Third street, New York, at 8:59 p. m. bound for the Erie Terminal, Pavonia Avenue, Jersey City. Whatever may have been the precise courses of these vessels they were such that they did in combination with the speed of each bring the boats into collision some time between 9:12 and 9:16 p. m., probably at 9:13, in such a fashion that the starboard side of the Tuxedo's bow struck the forward port side of the Binghamton. The guard of the Tuxedo rode up under the guard of the other boat. The result of the contact was damage to both vessels, though the Binghamton suffered more. The latter was hit first on the hull and then on the housing and the damage appeared to have been from forward to aft. The damage to the Tuxedo was in the opposite direction or from aft to forward. This, of course, shows that after the boats came together the Binghamton surged forward and scraped along the Tuxedo in so doing. No fault can be found with either boat with respect to lights, signals, or navigation generally except speed.

Each of these vessels navigated of necessity with reference to other boats in the vicinity. This known conduct in that respect made it possible for the trial judge to find with justification that the speed of each was about the same when they came within

sight of each other. As there is not the slightest suggestion that either boat was lacking in its effort to stop when the danger was seen, it should be taken for granted that these boats could not stop, after they came within sight of each other, in time to avoid a collision. This being so, could they have been navigating in the fog at the moderate speed the law requires under such conditions?

Article 16 of the Inland Rules (33 US CA § 192) is applicable. It provides that:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions.

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

What is moderate speed under such circumstances is a rate of speed not in excess of that which will permit a vessel to stop within the distance she can see another vessel with which she may be in danger of collision. The Colorado v. The H. P. Bridge, 91 U. S. 692, 23 L. Ed. 379; The Nacoochee, 137 U. S. 330, 11 S. Ct. 122, 34 L. Ed. 687; Appeal of Central R. Co. of New Jersey (C. C. A.) 22 F.(2d) 275. And ferryboats as well as other vessels are bound to comply. New York Central R. Co. v. City of New York (C. C. A.) 19 F.(2d) 294; The Howard (D. C.) 30 F. 280.

As these boats were on converging courses and neither was ahead of the other, it is but fair to assume that they were actually nearer together when they first could see each other than either was to the point of collision. If so, they had both traveled before they came into contact farther than the distance within which they could see each other. However that may be, the speed of each of them was greater than permitted by article 16 of the Inland Rules, since neither could stop within the required distance and both were consequently at fault.

It is now urged that the libelant was guilty of laches but there is no reason to believe that the claimant was prejudiced at all by the delay in bringing suit.

Decree reversed, with directions to enter a decree for the appellant for half damages.