**JOHNSTON–WARREN LINES, Limited, v. UNITED STATES et al.**

**ISTHMIAN S. S. CO. v. THE JESS-MORE et al.**

**INSURANCE CO. OF NORTH AMERICA et al. v. UNITED STATES et al.**

**STANDARD MARINE INS. CO. et al. v. UNITED STATES et al.**

**THE LONGVIEW VICTORY.**

United States District Court
S. D. New York.
July 27, 1951.

Burlingham, Veeder, Clark & Hupper, New York City, Chauncey I. Clark, Adrian J. O'Kane, New York City, of counsel, for The Jessmore.

Kirlin, Campbell & Keating, New York City, John F. Gerity, New York City, of counsel, for Isthmian S. S. Co.

Irving H. Saypol, U. S. Atty., New York City, for United States.

Bigham, Englar, Jones & Houston, New York City, Charles A. Van Hagen, Jr., New York City, of counsel, for Cargo libelants.

WRIGHT, District Judge.

The collision which is the basis of these proceedings occurred during a fog about 23 miles easterly from Ambrose Light Vessel on the morning of October 19, 1947, at 1:50. Involved in the collision were the British Motor Vessel Jessmore and the American Steamship Longview Victory.

The Longview Victory is a victory type steamer powered by steam turbine engines driving a single right hand propeller. She is 439 feet in length, 62 feet beam and 34 feet depth registered dimensions, and of 7,606 gross and 4,549 net registered tons. She was laden to a draft of 22 feet forward and 24 feet aft and 23 feet mean by 6,771 tons of general cargo. At all material times she was owned by the United States of America and operated by the Isthmian Steamship Company as a bareboat charterer.

The Jessmore is a British built vessel powered by so-called Doxford motors which are double acting Diesel engines driving a single right hand propeller. She is 418 feet in length, 57 feet beam, 34 feet depth registered dimensions, and of 7,061 gross and 4,244 net registered tons. She was laden to a draft of 20 feet forward, 22 feet aft and 21 feet mean by approximately 3,600 tons of general cargo and 1,500 tons of sand balast. At all material times she was and now is owned by Johnston-Warren Lines, Ltd.

On the evening of October 18th the Jessmore departed from a berth in the North River, New York, and thereafter discharged her Sandy Hook pilot in the area to the westward of Ambrose Lightship. She then took a departure, in fog, from a position a short distance southerly from Ambrose Light Vessel at about 11:15 p. m., and from that point set and steered a course of 100° by gyro compass, 99° true, with her engine turning ahead at 65 revolutions per minute, about 65% of her potential full speed power and revolutions, with her telegraph set at slow ahead. As she proceeded seaward, her navigation lights were set and burning; her master, watch officer and wheelsman were on her navigating bridge and a lookout was posted forward on her forecastle. She was sounding, by hand control, single blast fog signals at varying intervals from less than one minute to not in excess of about 1–½ minutes in fluctuating visibility.

In the early morning of October 19, 1947 the Longview Victory was proceeding on a course 272° true with her engines throttled down to harbor maneuvering conditions by use of 12 of her 21 turbine nozzles. Her revolutions were 40 per minute. Her navigation lights were set and burning full

brilliance and she was sounding single blast fog signals by hand control at intervals of about one minute. Her master, watch officer and wheelsman were stationed on her bridge and a lookout was stationed on the bow in the eyes of the ship.

According to the witnesses on the Jessmore, at 1:47 on the morning of October 19, 1947 a fog signal was heard forward of the beam, apparently dead ahead. The Jessmore's engines were immediately stopped for one minute until 1:48 when the mast headlights of the other vessel, which proved to be the S. S. Longview Victory, were sighted in transit directly ahead of the Jessmore and about 2,000 feet distant; whereupon the rudder of the Jessmore was put hard right, her engines dead slow ahead turning 46 RPM or 45% of her potential full power and she sounded a passing signal of one short blast as prescribed by Article 28 of the International Rules, 33 U.S.C.A. § 113. This passing signal was promptly answered with one short blast from the Longview Victory and as the Jessmore swung to starboard under the influence of her hard right rudder the mast headlights of the Longview Victory were brought on to the port bow of the Jessmore but these lights remained in transit. The Jessmore sounded a second signal of one short blast which was promptly answered by one short blast from the Longview Victory. The Longview Victory, however, continued on her same course heading toward the port side of the Jessmore. As the two vessels approached each other, the green and then the red running light of the Longview Victory came into sight. The Longview Victory was then heading for the Jessmore's bridge at about a right angle to the port side of the Jessmore and the Jessmore thereupon at 1:49 put her engines full speed ahead and her rudder hard left in an attempt to throw her stern clear of the bow of the Longview Victory. At 1:49½ a. m. the bow of the Longview Victory came into collision with the port side of the Jessmore abreast of No. 4 hatch and penetrated about 15 feet. The collision occurred 20 miles from Ambrose Lightship.

According to witnesses on the Longview Victory, just prior to 1:43 on the morning of October 19, 1947 the lookout on the bow telephoned the third mate on the bridge that he thought he heard a fog signal ahead. Whereupon the third mate returned to the wing of the bridge to listen. Almost immediately the mate heard a fog signal ahead bearing 2 points to the starboard bow. He stopped the engines and notified the master who was in the chart house obtaining radio direction finder bearings of the reason therefor. On stopping the engines the marine growth on the hull of the Longview Victory, the result of an extended trip in the Far East, assisted in retarding the Longview Victory's headway. Fog signals were continued by both vessels and after an interval of about four minutes the mast headlights of the Jessmore were observed through the fog bearing two points on the Longview Victory's starboard bow, followed in rapid succession by first the green momentarily and then the red side light of the Jessmore at a distance of about 1,000 feet. It was then determined, no signals other than fog signals having been heard or sounded, that the Jessmore was heading toward the Longview Victory's starboard side proceeding at a high rate of speed and was altering her course rapidly to starboard, pivoting so as to cant her length broadside across the bow of the Longview Victory, thereby keeping the Longview Victory from attempting avoiding action toward her starboard by use of rudder or engine. On observing the maneuver of the Jessmore the master of the Longview Victory judged that a collision was inevitable and put the Longview Victory's wheel hard left in an unsuccessful effort to cant her bow to port and minimize the force of contact with the rapidly approaching Jessmore. At 1:47 a. m., or a few seconds later, the wheelsman reported no steerageway and the engines were put full speed ahead in a second attempt to cant her bow to port away from a direct collision contact. Less than a minute later, when it was seen that the Jessmore's continued rapid swing to starboard would result in bringing her stem a short distance ahead of the stem of the Longview Victory, the Longview Victory

stopped her engines and about a half minute later telegraphed her engine to full astern. At 1:49.8 the stem of the Longview Victory, which was by this time practically dead in the water, came into contact with the port side of the Jessmore at No. 4 hatch, the continued swing of the Jessmore to starboard having the effect of throwing her stern to port against the Longview Victory. The collision occurred 23 miles from Ambrose Lightship.

The witness Hansen testified as an expert for the respondents and for the libelants in rebuttal. His testimony showed that the change of heading of the Jessmore from 99° to 170°, where it was immediately prior to the collision, would require an advance by the vessel of approximately 1,680 feet measured along the line of her original course and a transfer to her right of 610 feet. In other words, in changing her heading from 99° to 170° the Jessmore necessarily covered a distance of approximately 2,000 feet regardless of the speed at which the maneuver was made. He testified further that in the maneuver the Jessmore would be pivoting to a point 80 to 90 feet from her stem and, assuming a speed of nine knots, her stern would be traveling to port at a speed of approximately 2-1/2 knots. He testified further that considering the maneuver of the Jessmore, the sharp tearing of the plate on the forward side of the point of penetration and the rolling back of the plating on the after side would indicate to him that the penetrating vessel, Longview Victory, had little or no headway, if not actual sternway, at the time of the collision.

On analysis of the testimony given by both sides there seems to be only one major ground of disagreement. This involves the position of the two vessels with relation to each other at the moment of sight. The Jessmore maintains that the Longview Victory was dead ahead on a reciprocal course whereas the Longview Victory says that the Jessmore was bearing two points on her starboard bow turning to starboard. This basic disagreement must be resolved in favor of the Longview Victory. It is admitted by both sides that the angle of collision was approximately 90°. It is not denied

that in her turning maneuver the head of the Jessmore changed from 99° to at least 170°, while the Longview Victory held her course at 272°. The Longview Victory did place her wheel to port just prior to the collision but it appears that the vessel had no steerageway at that time and the rudder did not take effect. The witness Hansen shows that in her turning maneuver the Jessmore would have an advance of 1,680 feet and a transfer of 610 feet. Consequently, at the time fog signals were first exchanged the two vessels were on approximately reciprocal courses with lines of advance over 600 feet apart, and by turning to starboard, the Jessmore cut across the bow of the Longview Victory.

The resolution of this conflict in the testimony of the witnesses as to the initial positions of the two vessels poses an additional question. If the Jessmore were approximately one or two points on the Longview Victory's starboard bow why did the Jessmore apply hard right rudder? Assuming but not suggesting that the times recorded in the Jessmore's engine log are accurate, and the engine log is the only recorded information available from the Jessmore, the obvious answer to this question is that the Jessmore put her wheel hard right some time after hearing the fog signals of the Longview Victory but before the Longview Victory was in sight. This conclusion is borne out not only by the simple fact that if the Jessmore's master had seen the Longview Victory, he would not have deliberately cut across her bow, but also by the time elapsed and the distance traveled by the Jessmore from sighting the Longview Victory to collision. According to the log and to the testimony from the Jessmore, the Jessmore began her starboard maneuver at 1:48, or a minute and a half before the collision at 1:49½. At 1:48 the engines of the Jessmore had been stopped for a full minute and were then put dead slow ahead. The evidence indicates that the Jessmore decelerated down to approximately five knots after her engines were stopped for one full minute. Further, dead slow ahead on the Jessmore is less than five knots. The Jessmore's engines were put full ahead one-half minute before the colli-

sion, or at 1:49, but it is doubtful that the telegraph order materially affected her speed. Since a vessel traveling at five knots covers approximately 500 feet per minute, it would have taken the Jessmore four minutes to execute her starboard maneuver covering approximately 2,000 feet. It is obvious, then, that if the Jessmore did not see the Longview Victory until 1:48 and the collision occurred at 1:49.5 as her witnesses state, her wheel had been full right for two minutes and a half before the Longview Victory came into sight.

This conclusion that the Jessmore starboarded her helm before seeing the Longview Victory is further supported by the testimony of the lookout on the Longview Victory who says he saw the green light of the Jessmore momentarily before the red came up. The witnesses on the bridge of the Longview Victory, some 200 feet farther away from the Jessmore than the lookout, did not see the green light of the Jessmore but saw only the red. Further, the witnesses of the Jessmore testified that they saw the green light of the Longview Victory immediately before they saw the red, which would indicate that the Jessmore was moving to starboard at navigational sight.

The evidence is uncontradicted to the effect that the fog whistle of the Longview Victory was loud and clear while it appears that the fog whistle on the Jessmore was relatively feeble. Nevertheless, although the times as recorded by both vessels for the collision (1:49.5 for the Jessmore and 1:49.8 for the Longview Victory) are approximately identical, the Longview Victory reports hearing the fog whistle of the Jessmore a few seconds prior to 1:43 while no fog signal appears to have been heard by the Jessmore until 1:47. In other words, the Longview Victory being aware of the presence of another vessel had stopped her engines four full minutes before the Jessmore stopped hers. The alleged failure of the Jessmore to hear the loud and clear whistle signals of the Longview Victory must be attributed either to inattention or to the noise made by her Doxford motors. Even if we assume that

the proximity of the bridge to the engine and the noise of the engine kept the men on the Jessmore's bridge from hearing the Longview Victory's fog signals, there seems to be no reason why the hearing of the lookout in the eyes of the ship should be similarly impaired. In any event it was fault on the part of the Jessmore to fail to hear, either through inattention or engine noise, what she should have heard. This failure to hear the whistle signals of the Longview Victory undoubtedly accounts for the Jessmore's speed at the time of navigational sight, which speed made it impossible to take the headway off the vessel in time to avoid collision.

The speed of the two vessels is somewhat in dispute. The Jessmore, though her telegraph was set at slow ahead, her engine was actually turning 65 RPM or about 65% of her potential full speed power. She took her departure from Ambrose Light Vessel at 11:15 p. m. and arrived at the scene of the collision approximately two and a half hours later. By dead reckoning and taffrail log the Jessmore estimates that distance to be 20 miles, whereas by plotted radio direction finder bearings the Longview Victory estimates that distance at 23 miles. In other words, the speed of the Jessmore was 8 knots by her own admission and 9 knots if the radio direction finder bearing fix is to be preferred. Under the conditions of visibility which obtained at the time, not more than 2,000 feet and probably nearer 1,000, a speed of 8 or 9 knots was immoderate. Certainly on sighting the Longview Victory she could not have avoided collision by reversing her engines and coming to a dead stop. The Nacoochee, 137 U.S. 330, 11 S.Ct. 122, 34 L.Ed. 687; The Manchioneal, 2 Cir., 243 F. 801. If she could have, why did she engage in the extravagant starboard maneuver? On the other hand, the Longview Victory was proceeding under harbor maneuvering conditions at 40 RPM. Under ordinary circumstances 40 RPM would move the vessel through the water at the rate of approximately 8 knots but the marine growth on the hull at the time of the collision probably retarded her speed to the extent of approximately 2 knots. In any event when

the Longview Victory came into navigational sight of the Jessmore, her engines having been stopped for four minutes, she had lost her steerageway and at the moment of collision was probably dead in the water. As a matter of fact, if the Longview Victory had reversed her engines immediately on navigational sight of the Jessmore she in all probability would have gathered sufficient sternway to have avoided the collision.

I find the faults of the Jessmore contributing to the collision to be as follows:

1. Excessive speed. Under conditions of visibility less than 2,000 feet 8 or 9 knots is an immoderate rate of speed. Article 16 of the International Rules, 33 U.S.C.A. § 92.

2. Failing to stop her engines on hearing a fog signal forward of the beam, or failing to hear fog signals which she should have heard. It is difficult to believe that the Jessmore did not hear the fog signals of the Longview Victory prior to 1:47 or two and one-half minutes before the collision as reported by her witnesses. The vessels were obviously within a mile of one another for several minutes prior to 1:47 and there appears no reason why the loud and clear fog signals from the Longview Victory did not carry at least one mile. The feeble fog signal of the Jessmore apparently did. In any event, taking the testimony of the Jessmore's witnesses as it is, if the fog signals were not heard prior to 1:47 they should have been heard and consequently the Jessmore's engines should have been stopped prior to that time.

3. Turning in fog before navigational sight. Again, taking the testimony of the Jessmore without vouching for its credibility, the evidence preponderates to the effect that the Jessmore's wheel was put hard over before the Longview Victory came into navigational sight. If the Jessmore had waited for navigational sight her wheel would never have been placed hard right and the vessels would have passed starboard to starboard without contact.

I find the Longview Victory guilty of the following contributing faults:

1. Failure to stop engines on hearing fog signals forward of the beam. Article 16 of the International Rules. It is true the evidence indicates the first report from the lookout was that he "thought he heard a fog signal ahead." Article 16 of the International Rules says: "A steam vessel hearing" a fog signal shall stop her engines. Nevertheless, under the circumstances good seamanship would require a stopping of the engines immediately, even if the rule literally does not.

2. Failure to reverse engines. On navigational sight the Jessmore was crossing the bow of the Longview Victory. While the *in extremis* doctrine may protect a master who acts unwisely in a perilous situation not contributed to by himself, it cannot be shown here with any degree of certainty that the failure to stop the engines of the Longview Victory on the first report from the lookout did not contribute to this situation. The Pennsylvania, 19 Wall. 125, 22 L.Ed. 148. Further, as stated supra, if the engines of the Longview Victory had been reversed on navigational sight, the collision might have been avoided.

In view of the foregoing, I find mutual fault. Let decrees be prepared in accordance herewith.