86

The ANGLO–SAXON PETROLEUM CO., LIMITED OF LONDON, ENGLAND, owner of THE GOLDSHELL, Libellant-Appellee-Petitioner,

v.

UNITED STATES of America, Respondent-Appellant-Respondent.

UNITED STATES of America, as owner of THE WHITE PLAINS, Cross-Libellant-Appellant-Respondent,

v.

THE GOLDSHELL, her engines, boilers, tackle, etc., Cross-Respondent-Appellee-Petitioner.

No. 238, Docket 22425.

United States Court of Appeals Second Circuit.

Petition filed May 3, 1955.

Decided June 17, 1955.

Herbert P. Reid, New York City, for petitioner.

Before HAND, SWAN and HINCKS, Circuit Judges.

HAND, Circuit Judge.

The Goldshell has moved for a rehearing because of testimony in that part of the record that was not printed, and that we therefore did not have before us: i. e., that she was moving only as fast as was necessary to keep steerageway. Though we were to accept this as true, it would not be an excuse for exceeding "moderate speed" as we defined it in our original opinion: the command is imperative.[1] We do not read The Ludvig Holberg, 157 U.S. 60, 67, 68, 15 S.Ct. 477, 39 L.Ed. 620, as modifying this interpretation of the term; in that case the ship was indeed moving at no more than four miles an hour, but it did not appear that this was faster than

1. The Pennsylvania, 19 Wall. 125, 133, 134, 86 U.S. 125, 133, 134, 22 L.Ed. 148; The Nacoochee, 137 U.S. 330, 339, 11 S. Ct. 122, 34 L.Ed. 687; The P.R.R. No. 5, 2 Cir., 181 F. 833, 835; The Express, 2 Cir., 212 F. 672, 673; The Manchioneal, 2 Cir., 243 F. 801, 805; The Youngstown, 2 Cir., 40 F.2d 420, 421; The Southern Cross, 2 Cir., 93 F.2d 297, 299.

would allow her to stop at the existing visibility. At any rate we have so often held that inability to keep steerageway is not an excuse, that we shall adhere to that interpretation, until the Supreme Court corrects our mistake, if it is one.

■ However, The Goldshell also insists that, even though this be the proper interpretation, the evidence does not show that she violated Article 16, 33 U.S.C.A. § 192. We start with the 12th finding of fact that "at the time of the collision the fog was so dense that neither vessel was seen by the other until they were almost in collision. The consensus of the testimony is that they were approximately a ship's length apart when each saw the light of the other (500 to 530 feet)." Although this is not strictly a finding that that distance was the measure of the visibility, we so understand it. The speed of The Goldshell, when she heard the whistle of The White Plains four minutes before the collision, was at least three knots an hour through the water, according to her own witnesses. Some of these put it indeed at four and a half knots. At three knots she was moving at the rate of 300 feet a minute, and she had therefore less than a minute in which to stop before another vessel moving on the same tide and at the same rate would collide with her. No one could foresee who would make out an approaching steamer; it might be the lookout, or it might be someone on the bridge would have to take some steps to the signal to the engine room. Moreover, to reverse the engines was not the matter of an instant. Safety demanded an allowance of at least as much as fifteen seconds before the engines should be assumed to have been put full speed astern. There was no evidence whether the remaining part of a minute was enough to check the way of the ship; but that was clearly within her own knowledge, and she did not prove that she could have accomplished so un-

likely a feat. For these reasons we adhere to our original decision that her speed was too great.

■ Moreover, even though we were to hold the contrary, the question would remain whether she had violated the other part of Article 16: that is, whether after stopping her engines when she heard the whistle of The White Plains she "navigated with caution." She let her speed run off with her engines stopped, until she saw the green light of The White Plains which meant that that vessel was approaching and was not more than 530 feet away. That pause seems to us in itself a dubious "caution"; but we will not hold that it was a violation of Article 16. However, when she did make out the green light of The White Plains, she put her engines half speed astern and so she kept them for a minute. It is true that the engine room log states this time as half a minute, but all her other witnesses say it was a full minute. We hold that to wait so long was a second fault. The pilot gave in excuse for this delay, that when he saw the green light, he could not "determine the vessel's approximate course"; and that "at the speed we were going and the ebb tide half-speed would certainly stop the ship, that is, over the bottom." Since there was a tide of a knot and a half, this meant that the ship's speed through the water—which is all that counts—would still have been at least a knot and a half when, as he reckoned, he would meet The White Plains. When a pilot sees another vessel only a length away, bearing down upon him, and likely to cross his path, cautious navigation demands that he stop his way through the water as soon as he can. The situation is essentially the same when signals are crossed in good visibility.[2] It is true that by doing so the vessel may stop in the path of a crossing one, which would otherwise have gone under her stern; but specu-

2. The New York, 175 U.S. 187, 201, 20 S.Ct. 67, 44 L.Ed. 126; The Quogue, 2 Cir., 47 F.2d 873; National Motorship Corporation v. Pennsylvania R. Co., 2 Cir., 160 F.2d 510, 512; Oriental Trading & Transport Co., 2 Cir., 173 F.2d 108, 110.

lation is not permissible when it is impossible, as it was here, to know the course of the other vessel. Indeed, the pilot of The Goldshell did not offer such an excuse; apparently he was under that error, so common among seamen, that the speed over the bottom is relevant between two vessels moving on the same tide. We cannot of course know whether the collision would have been avoided, if The Goldshell had been put at full speed astern from the moment that she saw the green light of The White Plains, but that will not excuse her. It rested with her to show that the collision did not, and indeed could not, have resulted from either of the faults of which she was guilty.

Petition denied.