## THE ARTHUR ORR.

### LEATHEM & SMITH TOWING & WRECKING CO. v. THE ARTHUR ORR.

(District Court, E. D. Wisconsin. July 15, 1895.)

1. COLLISION BETWEEN STEAMERS—EXCESSIVE SPEED IN FOG.
   Where two steamers on opposite courses collided at night in a dense fog on Lake Michigan, and in the path of commerce between Chicago and Milwaukee, *held*, that both were in fault for excessive speed, it appearing that one was going at 10 and the other at 12 miles an hour.

2. SAME—SIGNALS IN FOG—CHANGE OF COURSE.
   It is a fault in a steamer running in a dense fog to make a radical change of course immediately on hearing a fog signal which is barely on one of her bows. The proper course is to slow down or stop, until, by signaling, the other vessel can be accurately located.

3. SAME—LEAVING PORT IN FOG.
   Quære, whether it is negligence per se for a steamer, in the absence of any imperative necessity, to leave port while her course is covered by a dense fog.

This was a libel in rem by the Leathem & Smith Towing & Wrecking Company against the steamer Arthur Orr to recover damages resulting from a collision.

Geo. G. Greene and M. C. Krause, for libelant.

Geo. C. Markham and C. E. Kremer, for claimant.

SEAMAN, District Judge. In this action, the libelant, as owner of the steamer Thomas H. Smith, seeks to recover for the loss of that vessel by collision with the steamer Arthur Orr. The collision occurred in a fog off Wind Point, near Racine, on the west shore of Lake Michigan, at about 3 o'clock in the morning, November 11, 1893. The Smith was sunk in 15 fathoms of water, and was a total loss. There is much of irreconcilable conflict in the testimony respecting the speed, signals, lapse of time, directions of sound, and distances, but the facts which are either undisputed or are well established by the evidence are sufficient, in my opinion, to show that there was negligence in the navigation of both steamers, and that the fault of both directly contributed to the disaster. The Orr was a steamer of 3,000 tons burthen. She left Milwaukee in a thick fog, without either cargo or charter, and for an hour immediately preceding the collision, and up to within a few moments of its occurrence (stated by its officers at not more than five minutes), was driving through the fog on her regular course, south by east, at a speed of 12 miles per hour, according to all the reliable testimony in her behalf;

this with the fog so thick that a light could not be distinguished for a distance in which the various statements place the maximum at 400 feet, and running "wild" directly in the path of the traffic to and from the great commercial port of Chicago. The Smith was a steamer of 198 tons, and had in tow the schooner Aldrich, of 182 tons. They left Chicago at 8 p. m., light, bound for Sturgeon Bay, and were on their compass course north, but did not encounter the fog until about 2 a. m. There was no appreciable wind or sea. Neither vessel was under sail, and they were making about 10 miles an hour, both before and after entering the fog.

The three-blast fog whistle of the Smith, indicating a tow, was heard on the Orr three or four times before it is claimed that there was any order to check her speed, or that any signal was given other than her one-blast fog whistle. The witnesses on the Orr locate the first sound of the Smith's fog signal about one point on their starboard bow, and say that it seemed to broaden there as it neared. Upon this observation they claim to have given a two-blast signal for passing starboard to starboard, and that her speed was then checked. The uncertainty, and the well-known aberrations of sound in a fog, should have warned the master of the Orr that entire reliance could not be placed upon it for locating the approaching steamer; and it is my opinion that even the appearance claimed was too nearly end on to venture the signal thereupon for passing starboard to starboard. The testimony on behalf of the Orr is positive that her course was not changed, but that she kept on with the same helm, and under some check, waiting for an answering signal; and I do not think there is sufficient in the circumstances upon which it is alleged on the part of the libelant that she came up on the starboard helm to overcome this direct testimony. She should therefore be acquitted of that fault. Whether it was negligence, for this steamer to leave port in the dense fog which then covered her cou., and in the absence of any imperative necessity, is an important question, and is strongly pressed for consideration in favor of the libelant. There are English cases which seem to so hold, notably The Otter, L. R. 4 Adm. & Ecc. 203, 2 Asp. (N. S.) 208, 8 Eng. R. 674. And in The Orange, 46 Fed. 408, Judge Brown remarks: "Unnecessary navigation in such a fog was, in itself, imprudent and unjustifiable." Again, in The Battler, 62 Fed. 612, the question was urged before Judge Brown in reference to a tug starting, with her tow, out of the Kennebec river, for New York, during the temporary lightening up of a prevailing fog, which shut down upon them, however, before reaching the open waters; and upon the testimony of navigators it was held that "the start was one that would be considered justifiable and reasonably prudent by skillful and prudent pilots accustomed to navigate these waters." No American authority is cited which would sanction a ruling that it was negligence per se to leave port or to proceed in a fog, and that liability for injury could be predicated on that fact alone, without other showing of fault. But there is no requirement to determine this question in the abstract, because it is well settled that in proceeding under such circumstances the steamer "was bound to ob-

serve unusual caution, and to maintain only such rate of speed as would enable her to come to a standstill, by reversing her engines at full speed, before she could collide with a vessel which she could see through the fog" (The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122; The Colorado, 91 U. S. 692); and this interpretation of the navigation rules is sufficient to place gross fault upon the Orr in the instant case. Whatever right she had to proceed in the fog was subject to the condition that she could and would run at a rate under which she could be controlled against the infliction of injury to the numerous craft she was liable to meet or overtake in the great thoroughfare upon which her course was laid. Her fault was in the speed maintained, and any checking down which was attempted after the warning of the approach of a steamer incumbered with a tow was manifestly insufficient for the necessary control to avoid collision under the known conditions. The warning was in ample time, and, if her speed had been moderated as rule 21 intends, she could have been stopped when the tow was sighted; or, if her power or bulk made this control uncertain, she should have stopped before reaching immediate proximity, to await an exchange of signals for passing.

On the part of the Smith there was also gross fault. She kept up her speed of about 10 miles an hour after entering the fog, and up to within a few moments of the meeting. She was not even checked down until after her wheel was ported. The combined speed of the steamers was such that there was not sufficient opportunity to ascertain their relative positions, or exchange signals intelligently and seasonably. From the libelant's testimony it appears that the fog signal of the Orr was not heard on the Smith as early as those on the Orr claim to have heard that of the Smith, and that they did not hear the first two-blast passing signal claimed to have been given by the Orr. The mate was on watch, and says he heard the fog whistle, which he located on his port bow, and immediately put the wheel a-port, and blew the passing one-blast whistle accordingly. The captain then rushed on deck and ordered the speed checked, which was too late for safety. They heard the supposed cross signal from the Orr after these orders. Almost immediately she loomed in sight, under considerable headway, and struck the port side of the Smith about amidship, the blow "angling slightly from aft forward." The vice in this maneuver of the Smith was the hasty porting of the helm. Instead of checking down or stopping until the position of the Orr could be known, they acted prematurely. This radical change of position was apparently made in reliance upon the location of the sound in a fog, and when even that semblance was barely on his port bow. They should have signaled, and waited for an answer on which to act intelligently. She thus ran directly across the bows of the Orr and brought on a collision. It is not claimed of this maneuver that it occurred in extremis. It was deliberate, and cannot be held entitled to that excuse. The speed of both steamers undoubtedly produced confusion and prevented intelligent action. There was mutual contributory negligence, and the damages must be equally divided. There will be a reference to ascertain the amount.