THE CHICAGO. THE PENCOYD. THE ASHBOURNE. THE TOWNSEND.

(Circuit Court of Appeals, Second Circuit. June 9, 1906.)

No. 255.

COLLISION—FERRYBOAT AND TOW—CONTRIBUTORY FAULT OF TUGS.

> Three tugs started from Perth Amboy on the flood tide with a tow of 24 boats for distribution at points in the North and East rivers. It was clear when they started, but, a dense fog coming on, they decided to take the entire tow to a dock at Jersey City until it cleared. Owing to the fog they passed the dock, and after turning to go back to it were in front of a ferry slip, and because of the strong tide were able to move the tow but slowly. While in this position and sounding proper fog signals a ferryboat came out of the slip, and by reason of her excessive speed and negligent navigation came into collision with and sank one of the boats in the tow. *Held*, that the tugs were not chargeable with contributory fault, on the ground that they were without power to handle their tow with greater dispatch, under the particular circumstances, which were not reasonably to have been anticipated.

> [Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 213–215.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree holding the three tugs jointly responsible with the ferryboat Chicago for a collision

resulting in the sinking of the barge Eliza, one of a number of boats in tow of the three tugs. The opinion of the District Court is reported in 134 Fed. 1013.

Pierce M. Brown, for appellant.
Henry G. Ward, for appellee The Chicago.
LaRoy S. Gove, for appellee libelant.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. The 3 tugs, with a flotilla of 24 boats, started from Perth Amboy for points in the East and North rivers. It is the custom for such tows to proceed up the bay, taking advantage of the flood tide, and about in the neighborhood of Oyster Island to separate the barges bound up the North river from those consigned to the East river. They reached Oyster Island about 6 a. m., the tide running a strong flood, and began to separate the tow. There was no fog when they started, and, although it had got thick by the time they reached Oyster Island, they could still see a distance of more than four miles. By the time, however, that they had got about half through effecting the separation, dense fog set in, and it was decided not to continue the work, but to take the entire tow up the North river to Packer Dock, Jersey City. This was undoubtedly the proper and prudent course to take. Packer Dock is about 1,000 feet below the Pennsylvania Railroad ferry slips. The tow proceeded cautiously, blowing regular fog signals; but so dense was the fog that they passed Packer Dock, and the first land they made out was a pier between it and the ferry slips. Thereupon they at once proceeded to round to under a starboard helm; the Ashbourne ahead on a hawser, the Townsend on the port side of the head tier, and the Pencoyd on the starboard side of the tail tier. During this operation the tide carried the whole flotilla up river, and when it was completed they were either abreast of, or a little above, the ferry slips. When the master of the Ashbourne got the tow straightened out, he found he was still going astern and blew for the Townsend, which came forward and put out her hawser, and, they both being unable to move the tow, he blew for the Pencoyd, which joined them, and, with all three pulling, gradually, but slowly, moved forward towards Packer Dock. The consequence was that for half an hour the tow remained opposite the ferry slips; regular fog signals being blown at all times. In consequence of the fog the ferryboats made trips at irregular times. While the flotilla was lying off the slips, the Chicago, starting from Jersey City under a full-speed bell, collided with the Eliza.

Inasmuch as the Chicago has not appealed, there is no need to set forth the grounds on which she was held liable. We concur with the District Judge in his findings as to her navigation. The libel was filed against the ferryboat, which brought in the tugs. The only faults charged against them in the pleadings were (1) that the fog signals required by law were not blown; (2) in endeavoring to handle the tow with only one tug; and (3) in proceeding too near the pierhead line on the Jersey shore. The District Court found that all three allegations were without merit, and the evidence abundantly

sustains such conclusion. The proper signals were sounded, three tugs were used, and, being bound to a wharf in the vicinity, they were justified in being so close to the pierhead line. The court, however, held that the tugs "were not warranted in obstructing the ferry slips an unreasonable length of time, even in a fog, and they must be held to have participated in the negligence which brought about the disaster, because of insufficient power to handle their tow with proper dispatch."

It may be noted that, inasmuch as this was not charged as a fault in the pleadings, the testimony was not directed specifically to that point. Upon the record as it stands, however, the majority of the court are of the opinion that the three tugs were of sufficient power to handle the tow under all ordinary conditions, and are not to be held in fault because, in consequence of an unexpected combination of dense fog with a tide, which they had to breast, instead of getting its help, they could not haul the tow faster than they did. Had they started in a fog, or when one was threatening, or put themselves in an awkward position in front of a ferry slip through some fault of navigation, a different case would be presented. But as it was clear when they started, and they had sufficient power for their short trip, and, when suddenly caught in dense fog, proceeded cautiously, observing the proper rules of navigation, the majority of the court are unable to concur in the conclusion that the tugs should be held in fault.

The decree is reversed, with costs of this court to the Philadelphia & Reading Railroad against the Chicago, and cause remanded, with instructions to decree in favor of the Eliza against the Chicago alone for damages, interest, and costs.