## DOLLAR S. S. LINE v. MATSON NAV. CO.

Circuit Court of Appeals, Ninth Circuit.
January 23, 1928.

No. 5207.

1. Collision ⬤➡85—Evidence held to sustain finding that vessel stopping engine on hearing fog signal was without blame for collision with vessel subsequently sighted traveling at immoderate speed (International Rules, art. 16 [33 USCA § 92]).

Evidence *held* to sustain finding that vessel proceeding in fog, which stopped engine after hearing fog signal, was free from blame under International Rules, art. 16 (33 USCA § 92; Comp. St. § 7854), with respect to collision with another vessel, subsequently sighted, traveling at immoderate speed, notwithstanding former's change of course.

2. Admiralty ⬤➡88—In libel proceedings, embodying findings in decree in addition to those contained in opinion, held discretionary.

Action of trial court in libel proceedings in embodying findings in decree in addition to those contained in opinion *held* within its discretion, and not subject to control of appellate court.

3. Admiralty ⬤➡88—Trial court in libel proceedings may decide whether to make findings, or write opinion, or embody findings in opinion or decree.

Trial court in libel proceedings may decide for itself whether to make findings, or write an opinion, or to embody findings in opinion or in its decree, without being subject to control of appellate court.

Rudkin, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; George M. Bourquin, Judge.

Libel by the Dollar Steamship Line against the Matson Navigation Company, in which libelee filed a cross-libel. Decree dismissing original libel and awarding full damages to the libelee, and libelant appeals. Affirmed.

Ira S. Lillick, of San Francisco, Cal. (Hunt C. Hill, of San Francisco, Cal., of counsel), for appellant.

Wm. Denman, of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. These are libels for a collision which took place April 9, 1925, north of Cape Blanco, off the Oregon coast, between the Melville Dollar, owned by the Dollar Steamship Line, and the Mauna Ala, owned by the Matson Navigation Company. At the time of the collision the Melville Dollar was proceeding on a voyage from the port of Seattle to the port of San Francisco, and the Mauna Ala was proceeding on a voyage from the port of San Francisco to the port of Bellingham, on a parallel course. According to the pilot house log of the Melville Dollar, her officers on the bridge first heard the fog whistle of the Mauna Ala at 5:38 a. m., on the starboard bow, well forward. The engines were then stopped, and one long blast of the whistle was sounded at short intervals; the vessel keeping her course. At 5:40 the Mauna Ala was sighted straight ahead, crossing the bow of the Melville Dollar from starboard to port at an angle of about 45 degrees. The engines of the latter were then put at full speed astern, and the collision followed about a minute later, or at 5:41, injuring both vessels. According to the bridge log of the Mauna Ala, her officers first heard the fog whistle of the Melville Dollar at 5:36, and the engines were immediately stopped; at 5:39 an order was given, slow ahead, helm hard aport; at 5:40 the Melville Dollar was sighted, and the Mauna Ala was ordered full speed ahead with helm hard astarboard; and at 5:40½ the collision occurred.

In some respects neither log seems entirely accurate. According to testimony given before the United States inspectors shortly after the collision by the quartermaster of the Melville Dollar, the first order given after the fog whistle from the Mauna Ala was heard was an order to stand by, and the next order was an order to stop. This testimony was corroborated by testimony given by the assistant engineer of the Melville Dollar at the same hearing. The time elapsing between the two orders was not stated by either witness. On the other hand, the pilot house log of the Melville Dollar shows that the stand-by order was given at 4:57, or about three-quarters of an hour before the collision. The fact that the fog whistle was not heard by the Melville Dollar until 5:38, or only three minutes before the collision, tends very strongly to corroborate the testimony given by the quartermaster and the assistant engineer at the hearing before the inspectors. The bridge log of the Mauna Ala shows that the order "helm hard aport" was given at 5:39, or three minutes after the first fog signal was heard; whereas the testimony of its officers tends to show that this order followed closely on the order to stop given at 5:36.

But counsel seem to concede in their briefs that the orders were given as disclosed by the testimony rather than as shown by the log. Up to the time the fog whistles were

heard by the respective vessels, they were both proceeding at full speed ahead, nine or ten knots an hour, through a fog of varying density. At the time of the collision the visibility did not extend beyond one or two ship lengths, or from 400 to 800 feet. On the foregoing testimony the court below found that the Melville Dollar was proceeding at an immoderate rate of speed at the time the Mauna Ala was sighted, that the Mauna Ala was proceeding at a moderate rate of speed for the situation and conditions then prevailing, and that the former was solely at fault. A decree was thereupon entered, dismissing the libel of the Dollar Steamship Line, and awarding full damages to the Matson Navigation Company. From this decree the Dollar Steamship Line has appealed, admitting its own fault, but claiming that the Mauna Ala was likewise at fault, and that the damages should be divided.

[1] The findings of the court below that the speed of the Melville Dollar was immoderate when the Mauna Ala became visible to her navigating officers, and that the speed of the Mauna Ala was moderate when she entered into the visibility between the two vessels, while somewhat general, are supported by the testimony. Article 16 of the International Rules (33 USCA § 92; Comp. St. § 7854) provides:

"Every vessel shall, in a fog, mist, falling snow, or heavy rainstorms, go at a moderate speed, having careful regard to the existing circumstances and conditions.

"A steam vessel hearing, apparently forward of her beam, the fog signal of a vessel the position of which is not ascertained shall, so far as the circumstances of the case admit, stop her engines, and then navigate with caution until danger of collision is over."

In The Umbria, 166 U. S. 404–417, 17 S. Ct. 610, 615 (41 L. Ed. 1053), the court said:

"The general consensus of opinion in this country is to the effect that a steamer is bound to use only such precautions as will enable her to stop in time to avoid a collision after the approaching vessel comes in sight, provided such approaching vessel is herself going at the moderate speed required by law. In a dense fog this might require both vessels to come to a standstill, until the course of each was definitely ascertained. In a lighter fog it might authorize them to keep their engines in sufficient motion to preserve their steerageway."

The Melville Dollar was proceeding through an intermittent fog, with rather limited visibility, until 5:38, or until within two minutes of the time when a collision became imminent and unavoidable. She then stopped her engines, but that of itself would retard her progress but little in this brief space. According to the testimony of her own expert, a vessel proceeding at ten or eleven knots per hour, with engines stopped, will run on her own momentum for a distance of .46 of a mile at an average speed of 9.75 knots per hour, so that it is quite apparent that her speed was lessened but little between the stopping of the engines and the time when the Mauna Ala came into view. Furthermore, we cannot readily understand why the fog whistle of the Mauna Ala was not heard sooner. The claim that it was not argues strongly either that the engines of the Melville Dollar were not in fact stopped until some time after the first fog whistle was heard, as the testimony given before the United States inspectors tends to show, or that the failure to hear the whistle sooner was caused by the admitted failure of the vessel to maintain a proper lookout. One or the other of these conclusions seems inevitable.

Of course, the extent of the admitted fault of the Melville Dollar is only material in so far as it may throw light on the conduct of the other vessel. On the other hand, the testimony tends to show that for some appreciable time before the Melville Dollar was sighted the Mauna Ala was maintaining a speed of from three to four knots per hour, or only sufficient to preserve her steerageway, and that she could have been stopped by reversing her engines within a ship length. This finding is challenged, but we think it finds support in the testimony. The Mauna Ala was running light, and lost headway very rapidly as soon as her engines were stopped. It appears from her log that she traveled three knots between 5:20 and 5:40½, the time of the collision. From 5:20 until 5:36 she traveled at the rate of about ten knots per hour, and would thus cover a distance of about 2⅔ knots up to the time her engines were stopped. She covered the remaining distance of approximately one-third of a knot between 5:36 and 5:40½, and inasmuch as her speed lessened rapidly after the stopping of the engines it seems quite manifest that the finding as to the rate of speed at the moment the other vessel was sighted is supported by the testimony. Strictly speaking, therefore, the Mauna Ala cannot be convicted of maintaining an unlawful rate of

speed at the time the other vessel came into sight, or for a brief period prior thereto.

But it is earnestly insisted that the unlawful rate of speed maintained at the time the first fog whistle was heard and the subsequent change of course contributed to the collision. This may or may not be true. As said by the court in The Ludvig Holberg, 157 U. S. 60–67, 15 S. Ct. 477, 480 (39 L. Ed. 620):

"We cannot say that these findings exhibit any fault on the part of the steamship in this particular. She was clearly not bound to stop solely on account of the fog, and if she had been running dead slow for four or five minutes before the collision, she cannot be held in fault for what her previous speed may have been. If she ran 20 miles an hour down to the Narrows, and was running dead slow at the time she first heard the tug's whistle, fault could not be imputed to her for her previous speed."

So here, if the Mauna Ala reduced her speed, so that she was running dead slow, or only maintaining steerageway, and could stop within a ship length on sighting another vessel, she would be free from fault, providing she had not changed her course. The change of course may have been premature and ill-advised under the circumstances, but in view of the fact that the fog whistle sounded almost straight ahead we cannot say that the change of course was a contributing fault, especially in view of the fact that she had ample time to pass in front of the other vessel in entire safety, had not the latter been maintaining an inexcusable and unlawful rate of speed. The City of New York, 147 U. S. 72–85, 13 S. Ct. 211, 37 L. Ed. 84; The Ludvig Holberg, and The Umbria, supra. For these reasons, the findings of the court below should not be disturbed.

The writer does not concur in this view. The two vessels were approaching each other in a fog, on parallel lines, the one running due south, the other due north, and neither vessel should have experienced any difficulty in definitely locating the position of the other. In the opinion of the writer, the change of helm, under such circumstances, was bad seamanship and a contributing fault under both American and English law. The Sea Gull, 23 Wall. 165–177, 23 L. Ed. 90; The City of New York, 147 U. S. 72–84, 13 S. Ct. 211, 37 L. Ed. 84, 85; The Kirby Hall, 8 P. D. 71; The Ceto, 14 App. Cas. 670; The Alberta (D. C.) 23 F. 807; The Britannic (D. C.) 39 F. 395;

The Wyanoke (D. C.) 40 F. 702; The Arthur Orr (D. C.) 69 F. 350; The Newport News (C. C. A.) 105 F. 389; Hall v. North Pacific Coast R. Co. (D. C.) 134 F. 309; The Delaware (C. C. A.) 213 F. 214.

[2, 3] Proctors for the Melville Dollar complain that the decree embodies findings in addition to those contained in the opinion, but this is a matter that rests within the discretion of the trial court. That court may make findings or not; it may write an opinion or not, and it may embody its findings in its opinion, or in its decree, or in both. Its course in that regard is not subject to the control of this court.

Again, we are asked to decide whether an appeal from an interlocutory decree, such as this, should be taken under the admiralty rule or under the general rule; but, inasmuch as that question is not presented by the record, any expression of opinion by us would be purely obiter.

The decree is affirmed.