## THE QUOGUE.

Circuit Court of Appeals, Second Circuit.
November 4, 1929.

No. 16.

684

William F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for appellant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Eugene Underwood, Jr., both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and MACK, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). ■ The pier at Sixtieth street extends into the river in such a manner as to form a triangular slip between its easterly end and the end of the pier or dock at Fifty-Ninth street. Within this slip three loaded coal barges lay side by side, the inner barge being up against the bulkhead or dock of the New York Steam Company, and the outside barge being the Lake Huron. There was some dispute whether any portion of the Lake Huron projected into the river beyond the pier line, but the District Court made an express finding, which we accept, that it did not. Consequently the tug was presumptively at fault. Where a properly moored vessel is run down by a moving vessel, a prima facie case against the latter is made out by the mere fact of collision. The Granite State, 3 Wall. 310, 18 L. Ed. 179; The Virginia Ehrman, 97 U. S. 309, 315, 24 L. Ed. 890. As was said in The E. S. Atwood, 289 F. 737, 739 (C. C. A. 2), this places upon the moving vessel the burden of explanation, although the ultimate burden of establishing negligence remains with the libelant. Briefly, the explanation of the Quogue is that she could have accomplished successfully her intended voyage, had not the unidentified tow forced her farther off shore than she had expected to go, causing her to become lost in the fog, and that thereafter she did everything which prudent navigation could demand.

We do not doubt that a fog may be so dense as to make the setting forth of a vessel into crowded waters, such as surround the city of New York, a fault which will put upon her the risk of disaster, however careful her subsequent navigation may be—at least in the absence of some necessity for undertaking her voyage without delay. While actual decisions upon the point are difficult to find, because some fault in navigation has usually appeared, authority is not entirely lacking, and the rule is inferentially supported by many decisions and dicta

of our own. If it is the duty of vessels overtaken in a thoroughfare by a dense fog to come to anchor as soon as a permissible anchorage can be found (La Bourgogne [C. C. A.] 86 F. 475, 479; The Persian [C. C. A.] 181 F. 439, 447), it must be equally their duty to refrain from setting forth into such a fog. Such is the clear implications of statements of the court in The Orange (D. C.) 46 F. 408, 411; The Chicago (C. C. A.) 146 F. 979, 980; The Mohegan (C. C. A.) 28 F.(2d) 795, 796. See also The Mohawk, 42 F. 189, 190 (D. C. E. D. N. Y.); The Georgia, 208 F. 635, 642 (D. C. R. I.); The Adriatic, 287 F. 257, 258 (D. C. S. D. N. Y.); The Aquadillana, 6 Asp. 390; The Lancashire, L. R. 4 Adm. & Ecc. 198. Cf. The Arthur Orr, 69 F. 350, 351 (D. C. Wis.); The Ella Andrews, 105 F. 651, 655 (C. C. A. 5). Indeed, it was substantially conceded upon the argument that if the fog was as thick when the Quogue set out as when the collision occurred, she would be responsible; but the fact that it was then so dense was disputed.

■ The District Court found that the fog was about the same when the Quogue set out as when the collision occurred. At the latter time her master says he could not see 100 feet, while the lookout testified that he could see clearly only about 25 feet. With respect to conditions when he set out, the master testified that the fog was exceptionally dense when he got off 50 or 100 feet from the pier ends, and he admitted that it was about the same when he started as when he stopped. In response to a later question, however, he testified that the fog had not been so thick when he first started out, but gradually got worse. When the discrepancy was called to his attention, he explained that he meant that the fog was just as bad when he got 100 feet out in the stream. He said that there would have been no difficulty in making his intended voyage, had not the unidentified tow forced him off shore; and in response to a question by the court as to how he could see to make it, he replied, "Well, your honor, we could keep off 40 or 50 feet." It seems clear that it was dangerously foggy for a vessel more than 50 or 100 feet off shore. On this record, we think the court's finding in respect to the fog is amply sustained.

■■ Despite the conditions found to prevail, The Quogue was exonerated from fault in setting forth for reasons stated by the District Court as follows: "Considering the shortness of the trip contemplated, and the fact that the route was entirely familiar to the captain of the tug, and that it could have been followed close to the pier ends, I do not

believe there was a lack of reasonable care in undertaking it." With this conclusion we cannot agree. It presupposes that the Quogue's navigation will be unimpeded by other vessels; but, if she was privileged to set forth, so were others. Each vessel must foresee the possibility of being forced by meeting another to get so far out into the channel as to encounter the danger of losing its bearings—to say nothing of the narrow channel rule of navigation. If a fog is so dense that a vessel must keep within a few feet of the pier heads in order to know where she is, it cannot be prudent to set out. The master of the Quogue had no right to suppose that he could go even a quarter of a mile without being forced out more than 50 feet from the pier ends. He was bound to apprehend that other vessels might come along and that he would have to navigate with reference to them. No necessity for immediately setting forth was shown. Under the circumstances it was imprudent to start out, and the collision was the proximate result of that initial fault. This conclusion makes it unnecessary to consider alleged faults in the subsequent navigation of the Quogue.

Although negligence in starting out is not laid as one of the specific charges of fault in the libel, it was urged and litigated at the trial. No claim of surprise, nor request for delay, nor exception to the evidence, was made by the appellee. The general allegation of negligence "in other respects which will be pointed out upon the trial" we regard as sufficient under these circumstances to sustain a decree for the libelant. See The H. M. Whitney, 86 F. 697 (C. C. A. 2).

Accordingly the decree is reversed.