**FEENEY MARINE CORP.
v. THE OTCO.**

**THE WHITEPORT.**

Civ. No. 4442.

United States District Court,
N. D. New York.

July 7, 1953.

George J. Hatt, 2d, Albany, N. Y., Mahar & Mason, New York City, for libellant.

Macklin, Speer, Hanan & McKernan, New York City, for respondent, Gerald J.

McKernan and James N. Allan, New York City, of counsel.

FOLEY, District Judge.

Libellant in this admiralty suit in rem against the tug Otco, owned by Oil Transfer Corporation, seeks collision damages as a result of a collision on the early morning of May 23, 1952. The collision involved a steel oil barge, Varrick, which was in a push-tow forward of the tug Otco, and the libellant's wooden canal barge Whiteport. At the time of the collision the Whiteport was moored port side to the dock of American Agricultural Chemical Company on the east bank of the Oswego River, and the tug Otco pushing the barge Varrick was proceeding southerly along said river toward Three River Point, N. Y.

The physical facts surrounding the location of the accident are simple, but the actions of the participants previous to and at the time of the collision are, as usual, seriously disputed by the parties as to their rightness or wrongness in the legal sense. In this first venture into admiralty, it is clear how easy it is for a judge to assume the role of the infallible helmsman and steer with undue familiarity through the rocks and shoals of an involved situation to the astonishment of the experienced seamen actually there![1] However, I shall keep in mind the well-spoken remark that hindsight always possesses 20/20 vision.

The claimant, Oil Transfer Corporation, admits only slight collision or contact with the Whiteport and minimizes the damage sustained. But the main emphasis of defense is laid upon improper mooring of the barge Whiteport in relation to its displaying white lights on the east side of the Oswego River when Canal Regulation 31 of the New York Canal System Rules and Regulations provided for red lights on that particular side of the canal channel.[2] In this respect, the claimant argues that the white lights displayed upon the barge Whiteport, under the existing fog conditions, misled the mate, DeKlerk, and the lookout of the tug, deckhand Chase, and that such statutory violation was a direct cause of the collision. The claimant further argues from the testimony produced at the trial that the barge Whiteport was improperly tied up to the dock, and that such carelessness resulted in slack lines allowing the Whiteport to veer to some extent toward the channel and thus diminish the opportunity of the barge Varrick, being pushed in tow, to avoid striking it when the emergency arose.

█ First, although not too important to this phase of the case, and without making any definite judgment upon the issue, I cannot agree the proof does not show more than slight damage. The testimony of Hinkley and Feeney is sufficient in that respect. The examination made by the deckhand of the barge Varrick and the deckhand of the tug Otco after the accident as to the damage of the Whiteport was hurried, limited and made in the dark and the fog.

█ The next issue as to the display of improper lights, sincerely and seriously presented and argued by the attorneys for the claimant, of course, presents a troublesome question. The simple answer to the problem is that I am unable to conclude from the proof that the display of white lights was a statutory violation in that it was an im-

1. The Mary T. Tracy, D.C., 298 F. 528, 530.

2. (Pertinent part of Reg. 31, Lights on Boats, Rules and Regulations Governing Navigation and Use of the New York State Canal System: "* * * Barges, scows or canal boats moored within or along the edge of the canal channel at night shall display: (a) If moored on the Starboard Side of the Canal, a Red Light shall be placed on the outside of the bow of the forward float and on the outside of the stern of the rear float. If moored on the Port Side of the canal, a White Light shall be placed on the outside of the bow of the forward float and the outside of the stern of the rear float. These lights shall be so placed as to be plainly visible to approaching floats.")

proper act under the particular canal regulation. The regulation provides for the stated display by barges, scows or canal boats moored "within or along the edge of the canal channel at night." Under the literal sense of this quoted phrase, it is difficult for me to say that the Whiteport, with its starboard side approximately 35 feet from the east edge of the channel, should be considered as a barge moored along the edge.[3] The term "edge" is simple, concise and easily defined and connotes a nearness much closer than the distance we have here, particularly where we have a river of approximate width of 400 feet (R. 52) and a 200 foot channel. Further, I cannot conclude that the white lights were inadequate to give warning because the testimony indicates they were standard white lights of a customary type and adequate for their purpose (R. 35, 36, 37). Placing the lights upon the deck at the bow and the hatch cover at the stern seem a sufficient compliance with the terms of the regulation in that respect (R. 97). My conclusion as to the adequacy of the lights in respect to brilliance and place, in my judgment, is fortified by the theory of the claimant that they were sufficient in intensity to create a "loom of white light" in a fog and were apparently strong enough to mislead and deceive the tug and its tow from the channel to the point of collision.

A highly significant fact to me in the determination of the adequacy of the lights is that there was no complaint as to the lights made by the mate or deckhand of the tug, or the deckhand of the Varrick to the captain of the Whiteport. As I read the testimony, the fact seems to be that the tug and barge were tied up alongside the Whiteport, the white lights were allowed to remain and to continue to cast "the loom of white light" so misleading to traffic in the channel.

█ I am not convinced by the evidence that the libellant's barge was not moored properly and securely to the dock. I accept the testimony of Hinkley in that respect and find that the four lines kept the barge fairly snug to and alongside the face of the dock. The testimony of the deckhands as to the condition of the lines after the accident is haphazard and inconsistent. The breaking of one of the lines and the post on the dock indicate to me that any slack in the lines after the accident was caused by the force of the impact. The mate of the tug had little to say about any slack in the lines as an actual fact and only stated that after the accident "the boat was tied up perfect" (R. 169).

█ As my final, and most important conclusion, taking the picture as a whole, it is my determination that the efficient, direct and concurring causes of the collision were faulty navigation under the circumstances on the part of the mate of the tug and a lack of alertness on the part of its lookout that if present would ordinarily have avoided the collision with the moored barge. It is difficult to follow the explanation of the mate and deckhand that after passing red buoy 2–A at a distance of 20 to 25 feet, they were misled by a white light or lights 400 feet distant while looking for the white stake light approximately 2,000 feet distant and on the opposite side. A clear picture of the location and channel marking is shown in Claimant's Exhibit "E". They were familiar with the waters and their inability to orient themselves to avoid going outside the channel and colliding seems to me the result of carelessness, inattention, and improper navigation and control under the weather circumstances present.

The burden of explanation has not been met by the claimant in my judgment and the necessary preponderance of proof fixes the responsibility for the collision upon the claimant through the negligent and careless acts of its employees. The Quogue, 2 Cir., 35 F.2d 683.

---

3. "Edge: an abrupt border or margin; verge; brink; rim" (Funk & Wagnalls New Standard Dictionary (1939).

A proper decree in accordance herewith may enter in favor of the libellant with interest and costs and the usual order of reference.

If necessary, the decree should be settled on notice.

The exhibits received in evidence are herewith returned to the respective attorneys by whom introduced.